GORMAN v AMERICAN HONDA MOTOR CO, INC

Docket No. 303005. Submitted June 11, 2013, at Detroit. Decided August 6, 2013, at 9:00 a.m.

Stacey W. Gorman brought an action against American Honda Motor Co., Inc., and DMR Limited, alleging that a car she had purchased from DMR's Acura dealership had various defects that should have been covered under warranty. The court, Martha D. Anderson, J., granted defendants' motion for summary disposition of all plaintiff's claims under MCR 2.116(C)(8) and (C)(10), and also denied plaintiff's motion for reconsideration. Plaintiff appealed.

The Court of Appeals *held*:

1. The trial court did not err by granting summary disposition under MCR 2.116(C)(10) with respect to plaintiff's claim that defendants had failed to honor an express warranty. The evidence showed that defects brought to defendants' attention during the warranty period were repaired within a reasonable time and that the vehicle was returned to service without any further complaints from plaintiff. Plaintiff's arguments to the contrary were based on speculation and inadmissible evidence.

2. The trial court correctly granted defendants summary disposition under MCR 2.116(C)(10) of plaintiff's claim regarding breach of the implied warranty of merchantability because plaintiff failed to produce evidence that a defect existing during the warranty period went unrepaired for an unreasonable period of time.

3. The trial court did not err by ruling that plaintiff failed to notify defendants within a reasonable time of her breach of warranty claims. Rather than providing notice, the history of repairs to plaintiff's vehicle actually indicated that defendants honored the warranty that plaintiff was provided.

4. Plaintiff's unspecified allegation of error regarding the Magnuson-Moss Warranty Act, 15 USC 2301 *et seq.*, was unsupported by any argument on appeal and was therefore deemed abandoned.

5. The trial court properly granted summary disposition of the claim plaintiff brought under the Michigan Consumer Protection

Act, MCL 445.901 *et seq.*, because that claim was based on the breach-of-warranty claims that were properly dismissed.

6. The trial court correctly granted defendants summary disposition under MCR 2.116(C)(8) of plaintiff's claim that defendants breached their obligation of good faith because that claim did not constitute an independent cause of action.

Affirmed.

ACTIONS — CONTRACTS — WARRANTIES — UNIFORM COMMERCIAL CODE — OBLIGA-
TION OF GOOD FAITH.

    Michigan law does not recognize an independent cause of action for a breach of the obligation of good faith with regard to performance and enforcement of contracts and duties within the Uniform Commercial Code, MCL 440.1101 *et seq.* (former MCL 440.1203; MCL 440.1304; 2012 PA 86).

*The Liblang Law Firm, PC* (by *Dani K. Liblang*), for plaintiff.

*Driggers, Schultz & Herbst, PC* (by *James J. Majernik*), for defendant.

Before: JANSEN, P.J., and CAVANAGH and MARKEY, JJ.

MARKEY, J. Plaintiff brought an action asserting breach of warranty and other claims against defendants, alleging that a 2007 Acura MDX she purchased from defendant Acura of Troy was defective. The trial court granted defendants' motion for summary disposition under MCR 2.116(C)(8) and (C)(10) and denied plaintiff's motion for reconsideration. Plaintiff appeals by right. We affirm.

Plaintiff purchased a new 2007 Acura MDX from defendant Acura of Troy on November 17, 2006. Plaintiff alleges that the dealer and defendant American Honda Motor Co., Inc. (Honda), provided warranties covering the vehicle "bumper to bumper" for 4 years or 50,000 miles, whichever came first. Defendants' warranty also extended to all parts installed by an Acura

dealer for one year or 12,000 miles, whichever came first. Plaintiff alleges that the primary defect in the vehicle, as demonstrated by its repair history, is the "active damper system" (ADS), which controls the struts and suspension system and gives the vehicle its smooth ride.

Plaintiff testified at her deposition that her Acura MDX had never broken down and that she had never contacted defendant Acura of Troy to request they take the vehicle back and reimburse her purchase price. Plaintiff also admitted that Acura of Troy had never improperly serviced her MDX.[1] She also testified that the SRS (air bag) message light would turn on and off. Plaintiff took the vehicle to Suburban Acura on April 1, 2010, where a faulty driver's seat sensor was found. Plaintiff testified that the air bag light's illuminating is what finally motivated her to file this lawsuit.

### I. TRIAL COURT RULINGS UNDER MCR 2.116(C)(10)

#### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Under MCR 2.116(C)(10), the motion tests the factual adequacy of a complaint on the basis of the entire record, including affidavits, depositions, admissions, or other documentary evidence. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). The trial court in deciding the motion must view the substantively admissible evidence submitted up to the time of the motion in a light most favorable to the party opposing the motion. *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d

---

[1] All repairs on the vehicle at issue were made by a nonselling dealer, Suburban Acura.

817 (1999). "Summary disposition is appropriate . . . if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

Questions of law, including statutory interpretation, are reviewed de novo on appeal. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 369; 803 NW2d 698 (2010).

### B. PLAINTIFF'S EXPRESS WARRANTY CLAIMS

Plaintiff first argues that the trial court erred by misconstruing what constitutes a breach of warranty. Specifically, plaintiff contends that while attempts were made to repair the vehicle's problems within the warranty period, the attempts were unsuccessful. Thus, plaintiff argues, the warranty failed its essential purpose. See *King v Taylor Chrysler-Plymouth, Inc*, 184 Mich App 204, 213; 457 NW2d 42 (1990). Plaintiff contends that a material question of fact exists regarding whether the cause of the vehicle's problems after the warranty expired were the result of a defect that existed during the warranty period that went unrepaired. Defendant Honda argues that it honored the manufacturer's obligations under the written warranty for all issues covered during the written warranty period. Thus, defendants contend that the trial court properly ruled: "There is simply no evidence of any breach [of warranty] on the part of either defendant." Defendants also note that plaintiff relies on an unsworn, unsigned affidavit of an expert, Anthony Zolinski, which cannot be considered on a motion for summary disposition.

We conclude that the trial court did not err by granting defendants summary disposition of plaintiff's express warranty claim on the basis that there was no evidence that defendants failed to honor it. The vehicle's repair history and putative expert testimony are insufficient to create a question of fact on plaintiff's express warranty claim. Plaintiff bore the burden of establishing that defendants breached the written limited warranty, i.e., that during the period of the warranty defendants were notified of a defect that they failed to repair. See MCL 440.2607(4); *American Bumper & Mfg Co v TransTechnology Corp*, 252 Mich App 340, 345; 652 NW2d 252 (2002); see also *Computer Network, Inc v AM Gen Corp*, 265 Mich App 309, 317; 696 NW2d 49 (2005). Plaintiff does not argue, or identify evidence indicating, that the vehicle was out of service for an unreasonable period of time during the performance of warranty service. Therefore, this case is distinguished from cases like *Pack v Damon Corp*, 434 F3d 810 (CA 6, 2006) and *Kelynack v Yamaha Motor Corp*, 152 Mich App 105; 394 NW2d 17 (1986), in which vehicles were out of service for extended periods of time during repair efforts.

In this case, the undisputed evidence shows that defects brought to defendants' attention during the warranty period were repaired within a reasonable time and that the vehicle was returned to service without any further complaints from plaintiff. The present case is controlled by *Computer Network, Inc*, 265 Mich App 309, in which every time the plaintiff presented the vehicle to the dealer for service, repairs were made and there was "no evidence that the time allotted for the presented repairs was unreasonable under the particular circumstances." *Id.* at 315. Further, "the vehicle was always repaired, returned, accepted, and used. Because

there was no question of material fact, summary disposition under MCR 2.116(C)(10) was appropriate." *Id.*

Plaintiff's arguments to the contrary are based on speculation and inadmissible evidence. First, plaintiff relies on the vehicle's repair history after the warranty period expired in February 2009. In June and July 2009, when the vehicle had been driven more than 60,000 miles, it was serviced because the ADS message light illuminated. Suburban Acura found stored codes 6-2 and 7-2 caused by an open circuit in the left strut. Defendant Honda apparently agreed to replace the left front strut as a matter of good will, with plaintiff paying $100 toward the repair. On July 28, 2009, when the vehicle had been driven 62,357 miles, plaintiff complained that it was riding rough. Suburban Acura found that the vehicle's upper sway bar connection was loose and tightened it to within specifications. On January 8, 2010, with 72,576 miles on the odometer, plaintiff presented the vehicle to Suburban Acura because various dash warning lights, including the ADS light, were illuminating. Problems relating to the exhaust converter were found and repaired. Suburban Acura also found an unspecified stored code regarding the ADS system, cleared it, and it did not reset. On February 12, 2010, after the vehicle had been driven 74,171 miles, the ADS message light illuminated. Suburban Acura found a stored code of 7-9 and traced the problem to the need to replace the right front and right rear shock coils, which was done.

Plaintiff's reliance on the vehicle's postwarranty repair history is misplaced because there is no evidence of a causal link between them and an unrepaired defect that plaintiff brought to defendants' attention during the warranty period. In a breach of contract case, the plaintiff must establish a causal link between the as-

serted breach of contract and the claimed damages. See *Miller-Davis Co v Ahrens Constr, Inc (On Remand)*, 296 Mich App 56, 71-72; 817 NW2d 609 (2012). In this case, there is no evidence the same repairs were made during and after the warranty period, and if they were the same, there was no evidence that the postwarranty repairs were not normal maintenance items as opposed to an unrepaired defect, or that the postwarranty repairs were not necessitated by poor workmanship by nonparty Suburban Acura, which performed all the warranty repairs. " 'There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only.' " *Kaminski v Grand Trunk W R Co*, 347 Mich 417, 422; 79 NW2d 899 (1956) (citation omitted). "To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994). Simply put, the postwarranty repair history creates only speculation and conjecture that defects disclosed to defendants during the warranty period went unrepaired; this is insufficient to create an issue of material fact to survive a motion for summary disposition. *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 282; 807 NW2d 407 (2011).

Neither defendants' expert's report nor the unsigned affidavit of plaintiff's expert assist plaintiff in creating a material question of fact on her breach-of-warranty claim. The report of defendants' expert provided evidence only of the condition of plaintiff's vehicle when he inspected it on September 14, 2010, with 85,645 miles on the odometer. Defendant's expert was not deposed and provided no evidence of a link between the condition of the vehicle when he inspected it and an alleged defect that went unrepaired during the warranty pe-

riod. The report of defendant's expert is no more help to plaintiff in creating an issue of material fact on her claim of breach of warranty than the vehicle's postwarranty repair history.

With respect to the putative affidavit of plaintiff's expert, it was unsworn and unsigned when submitted to the trial court for consideration at the hearing on defendants' motion for summary disposition. Defendants correctly argue that an unsworn, unsigned affidavit may not be considered by the trial court on a motion for summary disposition. See *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 33; 772 NW2d 801 (2009) ("unsworn statements . . . are not sufficient to create a genuine issue of material fact to oppose summary disposition under MCR 2.116(C)(10)"); *Pack*, 434 F3d at 815. Furthermore, appellate review of the trial court's decision is limited to the evidence that had been presented at the time the motion was decided. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009).

Even if the unsigned affidavit of plaintiff's expert is considered, it provides evidence only of the condition of the vehicle at the time the expert inspected it on October 21, 2010. The unsworn statement of defendant's expert provides no evidence of a causal link between the condition of the vehicle when he inspected it and an unrepaired defect that plaintiff brought to defendants' attention during the warranty period that went unrepaired.

In sum, plaintiff produced evidence that created only speculation and conjecture that defects disclosed to defendants during the warranty period went unrepaired; therefore, the trial court correctly granted defendants summary disposition on plaintiff's express warranty claim.

C. PLAINTIFF'S IMPLIED WARRANTY CLAIMS

In general, a warranty of merchantability is implied when the seller is a merchant of the goods sold and provides that the goods will be of average quality within the industry. MCL 440.2314; *Guaranteed Constr Co v Gold Bond Prod*, 153 Mich App 385, 391; 395 NW2d 332 (1986). "Merchantable is not a synonym for perfect[.]" *Id*. at 392-393. We conclude that the trial court correctly granted defendants summary disposition as to plaintiff's claim regarding breach of the implied warranty of merchantability.

Pertinent statutes regarding the implied warranty of merchantability include MCL 440.2314(1), which provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." MCL 440.2314(2)(c) provides, "[g]oods to be merchantable must be at least such as . . . are fit for the ordinary purposes for which such goods are used[.]" If an express warranty is provided, it controls over the implied warranty of merchantability but not an implied warranty of fitness for a particular purpose.[2] MCL 440.2317(c). Also, 15 USC 2308(a) generally precludes a "supplier" from disclaiming or modifying an implied warranty if the supplier provides any written warranty or enters into a service contract with the consumer. An exception to the general rule is provided in 15 USC 2308(b), which states that "implied warranties may be limited in duration to

---

[2] Plaintiff does not assert a claim for breach of an implied warranty of fitness for a particular purpose. See MCL 440.2315 ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.").

the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty." Here, it is undisputed that defendants limited the implied warranty of merchantability to the duration of the express warranty.

"To establish a prima facie case of breach of implied warranty, a plaintiff must show that goods were defective when they left the possession of the manufacturer or seller[.]" *Guaranteed Constr Co*, 153 Mich App at 392. In this case, as discussed in part I(B), plaintiff failed to produce evidence that a defect existing during the warranty period went unrepaired for an unreasonable period of time. Plaintiff's circular argument that the limits on the duration of the implied warranty failed because defendants breached the express warranty is without merit. Plaintiff did not create a question of fact that the express warranty was breached. And plaintiff failed to produce any evidence that the vehicle was not "fit for the ordinary purposes for which such goods are used." MCL 440.2314(2)(c). Therefore, the trial court properly granted defendants summary disposition as to plaintiff's claim for breach of the implied warranty of merchantability.

### D. REASONABLE NOTICE OF BREACH

Plaintiff argues that the trial court erred as a matter of law and fact in ruling that plaintiff failed to notify defendants within a reasonable time of her breach-of-warranty claims. Specifically, plaintiff argues that MCL 440.2607 does not apply to breach-of-warranty claims, but that if it does, she presented sufficient evidence to create a question of fact that defendant Honda was on notice that, in the words of the official comment to the

section of the Uniform Commercial Code from which MCL 440.2607 was derived, the transaction "is still troublesome and must be watched." UCC 2-607, Official Comment 4. Defendants argue that the statute provides no exception for breach-of-warranty claims and note that while the trial court stated that the "failure to notify the alleged breaching party within a reasonable period defeats Plaintiff's breach claims," it also ruled that "there is simply no evidence of any breach on the part of either defendant." Thus, defendant argues that plaintiff's failure to give defendants reasonable notice of her breach-of-warranty claims provided an alternative basis for the trial court to grant defendants summary disposition.

We conclude that the trial court did not err by ruling that plaintiff failed to give defendants reasonable notice of her breach-of-warranty claims and that lack of notice provides an alternative basis that bars her breach-of-warranty claims.

MCL 440.2607(3)(a) provides: "Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" In this case, plaintiff never provided either defendant notice of her claim that they were in breach of warranty until she filed the instant lawsuit, 16 months and 30,000 miles after her vehicle's warranty expired. By any standard, the notice of alleged breach of warranty that plaintiff provided was not reasonable; the plain language of the statute bars plaintiff "from *any* remedy." *Id.* (emphasis added). We find that plaintiff's arguments to the contrary are without merit.

Plaintiff first argues that Michigan law does not require presuit notice of a breach-of-warranty claim, citing *King*, 184 Mich App at 211. That case, however,

did not concern whether the plaintiff had given sellers reasonable notice of an alleged breach of warranty as required by MCL 440.2607(3) but rather concerned a buyer's revocation of acceptance under MCL 440.2608(2), which requires that revocation of acceptance "must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects." In *King*, the plaintiff drove the vehicle 6,000 to 7,000 miles over nine months before storing it because of numerous problems; the vehicle had a 12,000-mile or one-year "full warranty." *King*, 184 Mich App at 208-209. Plaintiff served the defendant with her complaint one month after storing the vehicle. *Id.* at 211. The Court concluded that the plaintiff's filing of her complaint "placed defendant on notice of [the] plaintiff's revocation within a reasonable time from when she discovered that the nonconformity substantially impaired the value of the vehicle." *Id.* Thus, *King* holds only that, on its facts, the plaintiff had given the defendant reasonable notice of revocation of acceptance as required by MCL 440.2608(2). *King* does not negate the requirement that a buyer give notice to a seller "within a reasonable time after he discovers or should have discovered *any breach* . . . or be barred from *any remedy*." MCL 440.2607(3)(a) (emphasis added).

Next, plaintiff attempts to distinguish *American Bumper* because that case involved a commercial buyer and a commercial seller. In *American Bumper* the plaintiff brought claims of "breach of express warranty, breach of implied warranties of fitness and merchantability, express indemnification, and implied indemnification," and the defendant sought summary disposition because the plaintiff had "failed to comply with the notice provision of . . . MCL 440.2607(3)(a), requiring a

buyer to notify a seller of a breach of contract within a reasonable time of discovering the breach, and that plaintiff was barred from any remedy." *American Bumper*, 252 Mich App at 344. The Court discussed comment 4 to UCC 2-607,[3] noting that some portions of the comment led courts to apply a lenient standard while other parts of the comment led courts to apply a strict standard regarding whether a buyer gave a seller reasonable notice of a breach. *American Bumper*, 252 Mich App at 345. The Court concluded that the notice in that case was not adequate because the notice did not satisfy the policies underlying the notice requirement[4]

---

[3] Comment 4 to UCC 2-607 reads as follows:

The time of notification is to be determined by applying commercial standards to a merchant buyer. "A reasonable time" for notification from a retail consumer is to be judged by different standards so that in his case it will be extended, for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy.

The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection (Section 2-605). Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.

[4] The stated policy reasons for the notice requirement were

(1) to prevent surprise and allow the seller the opportunity to make recommendations how to cure the nonconformance, (2) to allow the seller the fair opportunity to investigate and prepare for litigation, (3) to open the way for settlement of claims through negotiation, and (4) to protect the seller from stale claims and provide certainty in contractual arrangements. [*American Bumper*, 252 Mich App at 346-347.]

and because the plaintiff's conduct did not satisfy the UCC's standard of commercial good faith. *Id.* The opinion does not suggest that MCL 440.2607(3)(a) applies only in transactions between commercial buyers and commercial sellers. Nothing in MCL 440.2607 excludes its application to consumer retail sales transactions. See, e.g., *Head*, 234 Mich App at 105 (applying MCL 440.2607(1) to a retail transaction and holding that once goods are accepted the buyer must pay for them and may only revoke acceptance under MCL 440.2608).

Plaintiff next argues that, relying on comment 4 and caselaw, notice is sufficient to create a question of fact if it places an authorized agent of a manufacturer on notice that the "transaction is still troublesome and must be watched." Plaintiff's reliance on the last quoted part of comment 4 is misplaced. See *K & M Joint Venture v Smith, Int'l, Inc*, 669 F2d 1106, 1111-1113 (CA 6, 1982) (rejecting the district court's reliance on this part of comment 4 and holding that the critical question under UCC 2-607 is whether the seller has been informed that the buyer considered the seller in breach). It is clear from reading comment 4 in its entirety that the seller must be given actual notice that the buyer believes that the seller is in breach. The bottom line of comment 4 provides: "The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation."

Furthermore, plaintiff's position is not assisted by the unremarkable proposition that notice to an authorized agent may constitute notice to the principal. See *Halprin v Ford Motor Co*, 107 NC App 423, 426; 420 SE2d 686 (1992) (observing that most jurisdictions have

held that notice under UCC 2-607(3)(a) is sufficient if given to immediate sellers); *Malkamaki v Sea Ray Boats*, 411 F Supp 2d 737, 744-745 (ND Ohio, 2005) (ruling that the plaintiff presented sufficient evidence to create a question of fact regarding notice to the defendant through its authorized dealer or repair facility). In this case, plaintiff provided neither defendant Honda nor defendant Acura of Troy with any notice that she believed they were in breach until well after the vehicle's warranty had expired, and then only by filing her lawsuit. The history of repairs to plaintiff's vehicle does not provide notice that she believed defendants were in breach. To the contrary, the repair history indicates that defendants honored the warranty that plaintiff was provided: repairs were made, and the vehicle was returned to service without objection. Despite dicta regarding a new car buyer, *Standard Alliance Indus, Inc v Black Clawson Co*, 587 F2d 813, 825 (CA 6, 1978), which involved belated claims that repairs were inadequate, states the correct rule regarding notice:

> Section 2-607 expressly requires notice of "any" breach. Comment 4 says that notice "need only be such as informs the seller that the transaction is claimed to involve a breach." The express language of the statute and the official comment mandate notice regardless whether either or both parties had actual knowledge of breach. [*Id.*]

See also *K & M Joint Venture*, 669 F2d at 1112-1113.

Here, plaintiff provided defendants no notice at all that she believed defendants were in breach. Accordingly, plaintiff is "barred from any remedy." MCL 440.2607(3)(a). Therefore, in addition to correctly ruling that plaintiff failed to create a question of fact about whether defendants breached their warranty, the trial court also correctly ruled that plaintiff's failure to

notify defendants of their alleged breach within a reasonable period defeats plaintiff's breach claims.

### E. PLAINTIFF'S MICHIGAN CONSUMER PROTECTION ACT CLAIM

We first note that although the question plaintiff presents for this issue includes an unspecified error by the trial court regarding the Magnuson-Moss Warranty Act, 15 USC 2301, *et seq.*, plaintiff presents no argument at all on appeal in that regard. "It is axiomatic that where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court." *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

The Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*, prohibits "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce[.]" MCL 445.903(1). The act defines "trade or commerce" as "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity." MCL 445.902(1)(g).

In this case, plaintiff alleged regarding her MCPA claim that defendants generally failed to inform her regarding purported defects in the vehicle that she purchased or failed to comply with express and implied warranties to repair defects. Responding to defendants' motion for summary disposition, plaintiff asserted regarding her MCPA claim that defendants failed to provide promised benefits, including benefits promised by operation of law, MCL 445.903(y), represented goods had qualities they do not have, MCL 445.903(c), and

omitted or failed to reveal material facts, MCL 445.903(s). Citing *Mikos v Chrysler Corp*, 158 Mich App 781, 784-785; 404 NW2d 783 (1987), plaintiff argued that defendants "represented that it provided . . . a warranty it is now refusing to honor and failed to honor throughout the warranty period." Plaintiff also argued that her claim for "frustrated expectations" survives without the need to show actual damages, citing *Mayhall v A H Pond Co, Inc*, 129 Mich App 178, 185-186; 341 NW2d 268 (1983), and that her vehicle had a defect that defendants cannot repair. At the hearing on the motion for summary disposition, plaintiff's counsel conceded that plaintiff's MCPA claim was based on "a failure of the promised benefit," i.e., the warranty that they would repair any defects.

Plaintiff first argues that the trial court erred by ruling (1) that proof of a breach of warranty is a necessary element of her MCPA claim and (2) that plaintiff did not create a question of fact regarding whether defendants breached their warranties. This argument fails because, as discussed already, the trial court correctly dismissed plaintiff's breach-of-warranty claims. While proof a breach of warranty will not always be necessary to establish a claim under the MCPA, plaintiff in this case based her MCPA claim on defendants' alleged breach of warranty. It follows that the trial court correctly granted defendants summary disposition on plaintiff's breach-of-warranty-based MCPA claim.

Next, relying on *Gadula v Gen Motors Corp*, unpublished opinion of the Court of Appeals, issued January 5, 2001 (Docket No. 213853), plaintiff argues that she can establish her MCPA claim without the necessity of showing a breach of warranty by proof that the vehicle did not meet her reasonable expectations. Plaintiff's reliance on

*Gadula* is misplaced. First, *Gadula* is unpublished and therefore is not binding precedent. MCR 7.215(C)(1). Second, unlike the present case, the plaintiff in *Gadula* did not fail to prove a breach of warranty; she failed to prove that she had suffered any damages as a result of the breach of warranty, and the trial court dismissed her warranty claims on this basis. *Gadula*, unpub op at 1. The *Gadula* Court affirmed on the same basis. *Id.* at 2-3. The plaintiff's breach-of-warranty claim under the MCPA survived, however, because nominal damages may be awarded under the MCPA without proof of actual damages. MCL 445.911(2).[5] Here, plaintiff failed to present evidence to establish her breach-of-warranty claims, which formed the basis of her MCPA claims. *Gadula* is inapposite. The trial court did not err by dismissing plaintiff's MCPA claims.

Plaintiff also argues, relying on *Mayhall*, that the frustration of her reasonable expectations alone supports her MCPA claim. The plaintiff in *Mayhall* purchased a diamond that was "guaranteed perfect" but it, in fact, was not. The Court held that the plaintiff could maintain an action for violation of the MCPA based on the frustration of the plaintiff's reasonable expectations without the necessity of proving actual economic damages. *Mayhall*, 129 Mich App at 180-181, 186. Like the plaintiff in *Gadula*, the plaintiff in *Mayhall* established a breach of promise but could not establish monetary damages. On this basis, *Mayhall*, like *Gadula*, is distinguishable from the present case, in which plaintiff failed to produce evidence raising a question of fact about whether defendants breached their promised

---

[5] MCL 445.911(2) provides: "[A] person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees."

warranty. Moreover, in this case, defendants' express promise was to repair defects during the period of the warranty, and defendants' implied promise was that the vehicle was merchantable, which is not the same as a promise that goods are perfect. See *Computer Network*, 265 Mich App at 317.

In sum, plaintiff's complaint and argument below were that her MCPA claims were based on defendants' breach of warranty. Because plaintiff's MCPA claim is based on her breach-of-warranty claims—and the trial court correctly granted defendants summary disposition on those claims—the trial court also correctly granted defendants summary disposition on plaintiff's MCPA claim.

## II. TRIAL COURT RULINGS UNDER MCR 2.116(C)(8)

### A. STANDARD OF REVIEW

MCR 2.116(C)(8) permits a trial court to grant summary disposition when an opposing party has failed to state a claim on which relief can be granted. Thus, a motion under this rule tests the legal sufficiency of a claim. *Computer Network*, 265 Mich App at 312. The motion may not be supported or opposed with affidavits, admissions, or other documentary evidence, and must be decided on the basis of the pleadings alone. *Id.*; MCR 2.116(G)(2). The trial court reviewing the motion must accept as true all factual allegations supporting the claim, and any reasonable inferences or conclusions that might be drawn from those facts. *Detroit Int'l Bridge Co v Commodities Export Co*, 279 Mich App 662, 670; 760 NW2d 565 (2008). A motion for summary disposition under MCR 2.116(C)(8) may be granted only when a claim is so clearly unenforceable as a matter of law that no factual development could possibly justify

recovery. *Attorney General v Merck Sharp & Dohme Corp*, 292 Mich App 1, 8; 807 NW2d 343 (2011).

### B. PLAINTIFF'S CLAIM FOR BREACH OF THE OBLIGATION OF GOOD FAITH

Plaintiff argues that a right under the UCC is enforceable by an action unless specifically excluded pursuant to MCL 440.1106(2).[6] Thus, plaintiff asserts she may maintain an independent action for a breach of the obligation of good faith that was provided for in MCL 440.1203 when she brought her claims: "Every contract or duty within this act imposes an obligation of good faith in its performance or enforcement."[7] At the relevant times, MCL 440.2103(b) defined "good faith" for merchants as meaning "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Plaintiff argues that the trial court erred in dismissing her claim for breach of the obligation of good faith by relying on *Belle Isle Grill Corp v Detroit*, 256 Mich App 463; 666 NW2d 271 (2003), and *Ulrich v Fed Land Bank of St Paul*, 192 Mich App 194, 196; 480 NW2d 910 (1991), because these cases address common-law claims for breach of good faith. In sum, plaintiff contends that the UCC imposes a duty on a merchant to act in good faith and that the failure of a merchant to comply with this duty imposed by law is actionable. Plaintiff cites *Gen Motors Corp v Dep't of Treasury*, 466 Mich 231, 236; 644 NW2d 734 (2002), *KLT Industries, Inc v Eaton Corp*, 505 F Supp 1072, 1078 (ED Mich, 1981), and *Kovack v DaimlerChrysler*

---

[6] This provision was redesignated MCL 440.1305(2) effective July 1, 2013. See 2012 PA 86.

[7] This statutory obligation now appears at MCL 440.1304, which is identical but for the final phrase, which now reads "performance *and* enforcement." See 2012 PA 86 (emphasis added).

*Corp*, unpublished opinion of the Court of Appeals, issued May 11, 2006 (Docket No. 265761), in support of her argument.

Defendants, of course, argue that the trial court properly relied on *Belle Isle Grill*, 256 Mich App at 476, and *Ulrich*, 192 Mich App at 197, each holding that Michigan does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing, in dismissing plaintiff's claim pursuant to MCR 2.116(C)(8). Defendants assert the Court's opinion in *General Motors Corp*, 466 Mich at 236, which indicates that a party may be sued and the obligation of good faith argued to the jury, does not recognize a separate cause of action for a breach of the duty of good faith. Defendants further argue that while the obligation of good faith was applied in a breach of contract cause of action in *KLT Industries*, nothing in that decision creates a separate cause of action for the breach of good faith.

We conclude that the trial court correctly granted defendants summary disposition under MCR 2.116(C)(8) because Michigan does not recognize, nor does the UCC create, an independent cause of action for a breach of the obligation of good faith it imposes. The obligation of good faith is not an independent duty, but rather a modifier that requires a subject to modify. It is a principle by which contractual obligations or other statutory duties are to be measured and judged. Thus, while the obligation of good faith under the UCC may affect the construction and application of UCC provisions governing particular commercial transactions in various situations, it has no life of its own that may be enforced by an independent cause of action. Caselaw and the UCC itself provide no basis to infer that the obligation of good faith should be applied differently

than the common-law implied covenant of good faith and fair dealing, which the parties agree is not enforceable as an independent cause of action. See *Belle Isle Grill*, 256 Mich App at 476; *Ulrich*, 192 Mich App at 197. A close examination of the cases on which plaintiff relies confirms that the obligation of good faith has no application apart from some other contractual obligation or statutory duty.

First, *KLT Industries*, 505 F Supp 1072, is not precedentially binding and carries authority only to the extent it is persuasive. *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004). While the district court in *KLT Industries* discussed the UCC's obligation of good faith, it did so only in the context of deciding the parties' competing claims of breach of contract. *KLT Indus*, 505 F Supp at 1078-1079. Specifically, the obligation of good faith required that the defendant in that case give reasonable notice of the termination of the contract. The case did not recognize an independent action for breach of the obligation of good faith.

Similarly, *Kovack* "is not precedentially binding under the rule of stare decisis." MCR 7.215(C)(1). As in the present case, the plaintiff brought claims of breach of express and implied warranty, a claim for violation of the MCPA, a claim under the lemon law, MCL 257.1401 *et seq.*, and a claim for breach of the duty of good faith. The trial court granted the defendant summary disposition as to all claims, and this Court affirmed. Whether the UCC creates an independent cause of action for the breach of its obligation of good faith was not presented to or decided by the *Kovack* Court. The questioned presented was whether the trial court correctly dismissed this claim, and the *Kovack* Court held that the answer to that question was yes. While the Court ruled

on the basis of the undisputed facts, the Court's holding that the defendant was entitled to judgment as a matter of law confirms that the obligation of good faith arises only in relation to another contractual obligation or a statutory duty. The *Kovack* Court held that "because no genuine issue of material fact existed regarding breaches of express or implied warranties, plaintiff's claim of breach of the duty of good faith also fails." *Kovack*, unpub op at 4. This statement supports the conclusion that the obligation of good faith is not independently actionable because without the claims for breach of warranty, the good-faith claim failed.

The use-tax case that plaintiff cites, which held that vehicle components and parts General Motors provided to customers as part of GM's goodwill adjustments policy, *Gen Motors Corp*, 466 Mich at 233, likewise does not hold that the UCC's obligation of good faith creates an independent cause of action if breached. Rather, the Court held that GM's goodwill policy was an extension of GM's written limited warranties, *id.* at 234, and was "part of the consideration flowing to GM customers when they purchase a GM vehicle that is taxed pursuant to the [General Sales Tax Act, MCL 205.51 *et seq.*] at retail sale." *Id.* at 242-243. Consequently, when the Court refers to the UCC's obligation of good faith and states that GM could be sued if GM did "not consider complaints under the goodwill adjustment policy in good faith," *id.* at 240, the suit would be for breach of contract in general, not an independent suit for breach of the obligation of good faith.

Finally, the plain text of the UCC can be read in no other way than that the obligation of good faith is inextricably part of a contract or other statutory obligation, not a freestanding obligation that may support an independent cause of action. "Every *contract* or *duty*

within this act imposes an obligation of good faith *in its performance or enforcement.*" Former MCL 440.1203 (emphasis added).[8] Stated otherwise, there must be a contract or statutory duty on which the obligation of good faith is imposed. The UCC defines "good faith" in the case of a merchant to mean "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Former MCL 440.2103(1)(b); see also MCL 440.4605(1)(f) (omitting "in the trade").[9] The official comment to the analogous section of the UCC explains that the section states a basic principle "that in commercial transactions good faith is required in the performance and enforcement of all agreements or duties." Official Comment 1 to former UCC 1-203, current 1-304. Thus, the focus of the obligation of good faith is on the manner in which the *agreement* or *other duty* is performed or enforced. Consequently, nothing in the UCC supports the proposition that the obligation of good faith may be enforced independently from a claim for breach of contract or other statutory duty.

We affirm. Defendants, as prevailing parties, may tax costs pursuant to MCR 7.219.

JANSEN, P.J., and CAVANAGH, J., concurred with MARKEY, J.

---

[8] The fact that the final "or" in this provision has been changed to "and" does not alter our analysis. See MCL 440.1304.

[9] The current version of Michigan's UCC similarly defines "good faith." MCL 440.1201(2)(t) states: " 'Good faith', except as otherwise provided in article 5, means honesty in fact and the observance of reasonable commercial standards of fair dealing." Article 5, which relates to letters of credit, defines "good faith" as meaning "honesty in fact in conduct or transaction concerned." MCL 440.5102(1)(g).