# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF AARON REID, by KENNETH
REID, Personal Representative,

UNPUBLISHED
February 7, 2017

       Plaintiff-Appellant,

v

No. 328587
Livingston Circuit Court
LC No. 14-028291-NI

THOMAS WALKER, KIMBERLY WALKER,
RAYMOND WILLIS, VAUGHN VOIGHT, and
FRANCINE VOIGHT,

       Defendants-Appellees,

and

FARM BUREAU GENERAL INSURANCE,

       Defendant.

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and GLEICHER, JJ.

O'CONNELL, J (*dissenting*).

Plaintiff, the Estate of Aaron Reid, appeals as of right the trial court's order granting summary disposition to defendants Thomas Walker, Kimberly Walker, Raymond Willis, Vaughn Voight, and Francine Voight under MCR 2.116(C)(10). Thomas Walker, Raymond Willis, and Vaught Voight were each involved in the unfortunate accident that killed Aaron Reid as he was riding his bicycle at night along the side of a road. The trial court determined that no reasonable juror could conclude that Reid was less than 50% responsible for the accident. Because I agree with the learned trial court's ruling, I would affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the early morning on November 3, 2011, 19-year-old Reid met with his friends Mark Thibodeau and Jordan Salmi to ride bicycles and drink alcohol. According to Salmi's deposition testimony, from about 1:00 a.m. to 5:00 a.m., the teens shared a fifth of alcohol and rode their bikes on "state land," after which they went to a McDonald's restaurant. Thibodeau testified that the teens stayed at the McDonalds for between 40 minutes and an hour.

-1-

Salmi testified that when the teens left the McDonalds, they rode their bicycles along Whitmore Lake Road, intending to return home. Reid was wearing blue jeans, a dark colored shirt, and a camouflaged coat. Salmi testified that he was on the southbound side of the road behind Thibodeau, and Reid was on the northbound side of the road. Both Salmi and Thibodeau testified that they were not aware that a vehicle was approaching until they heard a crash.

Thomas Walker testified that he was driving his girlfriend to work in his pickup truck that morning. The day before the accident, he had noticed that one of his low-beam bulbs was "finicky" and would shut off if he hit a bump too hard. Walker exited a roundabout at about 30 miles an hour, gradually accelerated to between 45 and 50 miles an hour, and turned on his high-beam headlights. As he did so, he immediately saw Reid traveling from left to right across the road, hit his brakes, and swerved to the left. He struck Reid's bicycle with the front right of his truck.

Walker testified that he immediately slammed on his brakes and pulled onto the southbound shoulder to call 911. As he got out of his truck, he noticed that Reid was lying close to the yellow line in the opposite lane, and Salmi and Thibodeau were waving and screaming at oncoming cars to try to get them to stop. Salmi testified that he told Reid to get up and tried to grab him, but other vehicles were approaching Thibodeau testified that he was wearing a white coat while waving and screaming at vehicles to stop. He only got out of the way of the second vehicle at the last second.

Green Oak Township Police Officer Michael Jain indicated that he was operating a stationary radar on the southbound side of Whitmore Lake Road when he saw a vehicle that had been traveling northbound appear to stop on the southbound side of the road. After a second vehicle stopped, Officer Jain approached the scene, believing that an accident had occurred.

Raymond Willis testified that he was driving to work in his car that morning. He was traveling under the speed limit after passing a police car when he saw a truck's headlights on the wrong side of the road. Willis slowed down because he thought that the truck was experiencing difficulty and merged into the southbound lane to avoid the truck. Willis then saw something in the roadway and swerved to the right, but he was unable to avoid Reid and hit him with his car. He did not see anyone wearing a white jacket.

Vaughn Voight testified that he was driving his car about three car lengths behind Willis's car. He noticed a vehicle with three bright lights on the wrong side of the highway, slowed down, and moved into the northbound lane to give the vehicle a clear lane. The lights from the vehicle bothered his eyes and he did not see anyone wearing a white jacket. Voight saw the vehicle in front of him slightly swerve, but he did not swerve, hit something in the road and braked. After he stopped, young men were running and screaming. One of them said that his friend was under Voight's vehicle. Reid was pronounced dead at the scene.

Livingston County Sherriff Deputy Brad Neff conducted a crash scene investigation. According to Deputy Neff's report, he determined that Reid caused the accident because Reid was wearing dark clothing and had no reflectors or lights on his bicycle. Reid's blood alcohol content at the time of the accident was 0.07, and none of the vehicle drivers had alcohol in their systems. Salmi also stated to Deputy Neff that Reid started to cross the road without looking or

signaling. At his deposition, Salmi testified that he was not sure whether Reid had tried to cross the road in front of the truck, but he had no reason to dispute what he told Deputy Neff.

Deputy Medical Examiner Michelle Elieff testified that she performed an autopsy on Reid. Reid had impacts to both sides of his body, which was consistent with a turning motion or crossing from one side to the other when he was struck, and he did not show evidence of a rear impact. However, mechanical engineer John F. Wiechel indicated that the bicycle's rear tire was crushed inward, indicating that it was hit from behind, and crash reconstructionist Timothy Robbins also concluded that the damage to the bicycle indicated that it was struck in the rear.

Reid filed a six-count complaint against the defendants, asserting claims of negligence and wrongful death. Walker, Willis, and Voight moved for summary disposition under MCR 2.116(C)(10), asserting that they could not be found liable for the accident because Reid was more than 50% at fault. Reid responded to the motion by presenting Wiechel's report, which indicated that he believed the vehicles were each traveling too fast. Robbins also stated that the vehicles were traveling too fast for the conditions based on his review of the damage and police report, and he did not believe alcohol was a factor. Werner U. Spitz, an expert in forensic pathology and toxicology, also stated that he had reviewed the facts of the case and concluded that alcohol was not a factor. Reid alleged that a question of fact existed regarding the cause of the accident because Walker admitted he was speeding and had a nonfunctioning headlight, and that Willis and Voight were traveling too fast and did not act with proper caution when approaching the area.

The trial court granted summary disposition to the defendants, stating that it was impossible to conclude that Reid was not more responsible for the crash. The trial court cited Reid's dark clothing, lack of reflectors and lights, and lack of sleep at the time of the accident. The trial court opined that even accepting that Walker was traveling over the speed limit, neither Willis nor Voight were speeding when they passed Deputy Jain's patrol vehicle, and there was no indication that they were traveling too fast for the conditions. The trial court also found that Reid's blood alcohol content was 0.07, and the conclusions of Reid's experts that alcohol did not play a factor were not supported by facts. Finally, the trial court concluded that Reid had not established any evidence of negligence on the part of the defendants.

## II. STANDARDS OF REVIEW

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." The trial court must consider all the documentary evidence in the light most favorable to the nonmoving party. *Maiden*, 461 Mich at 120. A genuine issue of material fact exists if, when viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 116; 839 NW2d 223 (2013).

To survive a motion for summary disposition, once the nonmoving party has identified issues in which there are no disputed issues of material fact, the burden is on the plaintiff to show that disputed issues exist. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314

(1996). The nonmoving party "must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*. at 362. If the nonmoving party does not make such a showing, the trial court properly grants summary disposition. *Id*. at 363.

## III. ANALYSIS

Reid contends that the trial court improperly granted summary disposition because there was a genuine issue of material fact regarding whether Reid was more than 50% at fault for the accident. I disagree.

Typically, whether a driver was negligent is a question of fact for the jury. *Cole v Barber*, 353 Mich 427, 431; 91 NW2d 848 (1958). However, if no reasonable juror could find that the defendant was more at fault for the accident than the decedent, summary disposition may be appropriate. *Huggins v Scripter*, 469 Mich 898, 898; 669 NW2d 813 (2003).

A person may also be subject to liability in an action arising out of a motor-vehicle accident if the injured person "suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). But MCL 500.3135(2)(b) limits this liability, providing that "damages shall not be assessed in favor of a party who is more than 50% at fault." MCL 600.2955a(1) also precludes liability if an individual is intoxicated and 50% or more at fault for an accident. An individual under 21 years of age is intoxicated if he or she has a blood alcohol content of 0.02 to 0.08. MCL 257.625a(6)(a).

In this case, it is clear that Reid was 50% or more at fault for the accident in this case. As the trial court noted, he was wearing dark clothing, his bicycle had no reflectors, and he was bicycling while intoxicated. Walker also testified that when he saw Reid, Reid was travelling from left to right across the road and passed in front of his truck. Salmi also stated at his deposition that he could not dispute that he told Deputy Neff that Reid was trying to cross the road in front of the truck. While Reid contends that the physical evidence indicates that Reid's crushed bicycle tire indicates he was struck from the rear, this does not mean that Reid was not crossing at an angle in front of the truck. Deputy Medical Examiner Elieff testified that Reid's physical injuries included no evidence of a rear-type impact and instead were consistent with crossing from one side to the other when he was struck. Deputy Neff, who was on the scene, determined that Reid's actions caused the accident. The conflicting physical evidence might create a question of fact had two witnesses not also stated that Reid decided to cross in front of the truck, but given the testimony that Reid crossed in front of the truck, I conclude that reasonable minds could not differ on this issue.

Also of note, Reid, who was below legal drinking age, was intoxicated. See MCL 600.2955a; MCL 257.625a(6)(a). Salmi testified that he, Reid, and Thibodeau had split a fifth of alcohol over the course of the evening. Reid also had not had any sleep that evening. Though Salmi testified that there were no indications that Reid was unable to handle his bike or was still feeling effects from the alcohol, Reid's decision to cross in front of the truck contradicts that statement. Additionally, Deputy Medical Examiner Elieff testified that even at lower levels, alcohol can affect judgement, distance perception, and coordination. An adult is intoxicated at a blood alcohol level of 0.08 to the extent that he or she cannot drive. MCL 257.625(1)(b). Reid was intoxicated to the level of 0.07.

For these reasons, I would conclude that no rational juror could conclude that Reid, who was intoxicated and wearing dark clothing without reflectors at the time of the accident, was not more than 50% responsible for the accident. Accordingly, I would conclude that the trial court appropriately granted summary disposition.

I would affirm.

/s/ Peter D. O'Connell