# STATE OF MICHIGAN

# COURT OF APPEALS

TAKISHA WILLIAMS,

        Plaintiff-Appellant,

v

AAA MICHIGAN and AUTO CLUB
INSURANCE COMPANY,

        Defendants,

and

ROBIN MARIE WROBEL,

        Defendant-Appellee.

UNPUBLISHED
May 17, 2018

No. 338337
Macomb Circuit Court
LC No. 2016-000655-NF

Before: CAMERON, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

Plaintiff, Takisha Williams, appeals as of right an opinion and order granting summary disposition in favor of defendant, Robin Marie Wrobel, in this third-party automobile negligence action.[1] We reverse.

## I. BACKGROUND

This matter arises from an automobile accident in which defendant struck the rear end of plaintiff's vehicle at a stoplight. According to plaintiff, when defendant struck the vehicle, plaintiff's seatbelt immediately locked, causing her head to snap backward and hit the headrest, and she felt a tug in her left shoulder. Approximately 90 minutes after the accident, plaintiff went to the hospital with intense pain in her neck, back, and shoulder. A week later, plaintiff visited the hospital a second time and was diagnosed with a cervical strain, lumbar strain, thoracic myofascial strain, and a left shoulder strain. A day later, plaintiff visited her primary doctor, Dr. Stephen Swetech, and he diagnosed plaintiff with a cervical spine strain, and he

---

[1] The remaining defendants entered into a settlement agreement with plaintiff.

-1-

prescribed pain medication, physical therapy, and two weeks' rest from work. Swetech also ordered a cervical MRI and a MRI of plaintiff's left shoulder, both indicating injury to the neck, back, and shoulder.

Thereafter, plaintiff filed a third-party claim against defendant. At the close of discovery, defendant moved for summary disposition under MCR 2.116(C)(10). The trial court granted defendant's motion, concluding that plaintiff failed to present a genuine issue of material fact as to whether she suffered a serious impairment of a body function, i.e., that her injuries resulted in an objectively manifested impairment of a serious body function that affected her general ability to lead a normal life. On appeal, plaintiff argues that the trial court erred in granting defendant's motion for summary disposition because plaintiff proffered sufficient evidence to demonstrate that she suffered a serious impairment of body function as required by MCL 500.3135. We agree.

## II. STANDARD OF REVIEW

This Court reviews whether a trial court properly granted a motion for summary disposition de novo. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court reviews only the evidence that was presented at the time the motion was decided, which, under MCR 2.116(C)(10), includes "affidavits, pleadings, depositions, and other evidence" that the parties submitted. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016) (quotation marks and citation omitted). Additionally, the trial court reviews the evidence in a light most favorable to the party opposing the motion. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013).

"A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 474-475; 776 NW2d 398 (2009). Under MCR 2.116(C)(10), summary disposition is appropriate if the evidence submitted by the parties fails to establish a genuine issue of a material fact, and the moving party is entitled to judgment or partial judgment as a matter of law. *Innovation Ventures*, 499 Mich at 507. A genuine issue of material fact exists if, after viewing the record in a light most favorable to the nonmoving party, reasonable minds could differ on an issue. *West v Gen Motor Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court may not make findings of fact, "weigh the evidence[,] or make determinations of credibility when deciding a motion for summary disposition." *Innovative Adult Foster Care*, 285 Mich App at 480.

## III. SERIOUS IMPAIRMENT OF BODY FUNCTION

Under Michigan's no-fault insurance act, tort liability is limited. *Patrick v Turkelson*, __ Mich App __; __ NW2d __ (2018) (Docket No. 336061); slip op at 4. However, "a person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered . . . [a] serious impairment of body function." MCL 500.3135(1). A "serious impairment of body function" is defined as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). Whether the plaintiff has suffered a serious impairment of body function is a threshold question that the trial court

should decide as a matter of law if there is no "factual dispute concerning the nature and extent of the person's injuries," MCL 500.3135(2)(a)(*i*), or "there is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function," MCL 500.3135(2)(a)(*ii*). "[T]he disputed fact does not need to be outcome determinative in order to be material, but should be " 'significant or essential to the issue or matter at hand.' " *McCormick v Carrier*, 487 Mich 180, 194; 795 NW2d 517 (2010), quoting *Black's Law Dictionary* (8th ed). However, when there is a genuine issue of material fact as to the nature and extent of the plaintiff's injuries, "the threshold question of whether there was a serious impairment of body function is for the jury and may not be decided as a matter of law." *Patrick*, __ Mich App at __; slip op at 4.

In *McCormick*, the Supreme Court articulated the test to establish a serious impairment of body function:

> (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living). [*McCormick*, 487 Mich at 215.]

Notably, a "bright-line rule or checklist" does not exist in making this evaluation. *Chouman v Homeowners Ins Co*, 293 Mich App 434, 441; 810 NW2d 88 (2011). Whether an individual has suffered a serious impairment of body function is "inherently fact-and circumstance-specific," and the analysis in making this determination must be "conducted on a case-by-case basis." *Id.*, quoting *McCormick*, 487 Mich at 215.

An objectively manifested impairment is generally one that is "observable or perceivable from actual symptoms or conditions." *McCormick*, 487 Mich at 196. There must be evidence of "actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Id.* The plaintiff may proffer evidence—generally, medical testimony—of a physical basis for the pain and suffering to demonstrate that the impairment is objectively manifested. *Patrick*, __ Mich App at __; slip op at 4. Mere subjective complaints are insufficient to show impairment. *Id.* If an objectively manifested impairment of a body function has been shown, the next question is whether the impaired body function is important. *McCormick*, 487 Mich App at 198.[2] A body function is important if it has "great value, [is] significant, or [is of] consequence." *Id.* at 199 (quotation marks and citation omitted). Once a plaintiff has suffered an objectively manifested impairment of an important body function, the plaintiff must demonstrate that the impairment has affected his or her general ability to lead a normal life. *Id.* at 200. The impairment will have "an influence on some of the person's capacity to live in his or her normal manner of living." *Id.* at 202. Whether the

---

[2] Defendant does not dispute that the use of plaintiff's neck, back, and shoulders are important body functions.

impairment has affected one's general ability to lead a normal life is a subjective inquiry. *Patrick*, __ Mich App at __; slip op at 4. The plaintiff's ability to lead a normal life need not be destroyed, nor does the impairment need to last a certain period of time. *Id.*

## A. OBJECTIVELY MANIFESTED IMPAIRMENT

Plaintiff argues that her neck, back, and shoulder pain constitutes an objectively manifested impairment. We agree.

Review of the record reveals that plaintiff went to Henry Ford Macomb Emergency on the same day as the accident and again on June 8, 2015. The medical record indicated the diagnoses of a cervical strain, lumbar strain, and thoracic myofascial strain. Plaintiff also presented evidence from her visits with Swetech, a board-certified doctor. Swetech first saw plaintiff 11 days after the accident. Based on the MRI results, Swetech concluded that plaintiff had a "reversal of [her] cervical loradis," multiple marginal spurs, disc bulges, disc-spur bulges, and fatty marrow changes within her vertebrae. Results from the MRI on plaintiff's left shoulder showed that plaintiff had tendonitis, moderate fibro-osseous capsular hypertrophy, but there was "no evidence for any particular bursitis or significant shoulder joint effusion."

Defendant relies primarily on the findings of Dr. Patrick L. Stephens, who performed an independent medical evaluation on March 17, 2016. Stephens indicated that the MRIs demonstrated a preexisting cervical disc disease and that plaintiff had subjective complaints of pain in her left shoulder. However, Stephens explicitly opined that plaintiff "may have sustained a lumbosacral strain" as a result of the accident even though he did not believe that her current symptoms were related to the accident. Stephens also opined that plaintiff "did sustain a whiplash associated disorder," but that the condition had resolved itself by the time of the examination. Additionally, Stephens concluded that plaintiff "may have sustained some myofascial trauma to her shoulder."

It is clear that the record includes evidence of medical findings establishing a question of fact as to whether plaintiff's neck and back pain manifested itself in ways that were observable and documented by medical professionals. See *Patrick*, __ Mich App at __; slip op at 6. Rather than follow the factors set forth in *McCormick*, the trial court improperly made its own evaluation regarding the persuasiveness of plaintiff's medical evidence related to her back and neck pain. *Innovative Adult Foster Care*, 285 Mich App at 480. See also *Patrick*, __ Mich App at __; slip op at 6. Additionally, defendant focuses the majority of his argument on causation. However, causation is generally an issue of fact to be decided by a trier of fact. *Nichols v Dobler*, 253 Mich App 530, 532; 655 NW2d 787 (2002). The objective MRIs and medical record offered by plaintiff relate findings of subjective complaints to the accident. Moreover, plaintiff's medical records before the accident, including cervical MRIs, indicated that she did not have nearly the level of injury to her neck and back as was present on the post-accident MRIs. While defendant claims that these injuries are degenerative ailments and not a result of

the motor vehicle accident, the question of causation should be properly left to the jury. When reviewing the evidence in a light most favorable to plaintiff, there was sufficient evidence to create a genuine issue of material fact as to whether she suffered an objectively manifested impairment and a physical basis for her complaints of pain and suffering.[3]

## B. GENERAL ABILITY TO LEAD A NORMAL LIFE

Plaintiff also argues that there is a material question of fact as to whether her neck and back pain has resulted in an inability to generally lead a normal life. We agree.

Whether plaintiff has suffered an impairment that affected her "ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident." *McCormick*, 487 Mich at 202. Plaintiff's deposition showed that she was fired from her job as a nursing assistant because she could not perform the physical duties, and she initially required help from her mother with cooking, cleaning, laundry, showering, and dressing five or six times a week. Plaintiff testified that she can no longer run on a treadmill and cannot dance. Plaintiff also presented record evidence that she could not work for approximately seven months because of the pain she was experiencing. Viewing the evidence in a light most favorable to plaintiff, there is an issue of fact as to whether plaintiff's injuries have affected her general ability to lead a normal life. Just because she is still able to do some work, or can run, walk for 30 minutes, and take vacations, does not mean that her ability to lead a normal life has not been diminished. The plaintiff's ability to lead a normal life need not be destroyed, nor does the impairment need to last a certain period of time. *Patrick*, __ Mich App at __; slip op at 4. To find otherwise would be an improper factual determination.

Although Stephens stated that he did not believe plaintiff's "ongoing" symptoms were a direct result of the accident, a serious impairment of bodily function need not be permanent. *McCormick*, 487 Mich at 203. The fact that some of plaintiff's symptoms have resolved themselves overtime does not mandate a conclusion that plaintiff never suffered the impairment of a bodily function. See *id*. at 203. Additionally, plaintiff's previous back and neck pain does not preclude a finding that plaintiff suffered an additional injury as a result of the accident. Therefore, based on the evidence presented, there is a question of fact with respect to whether she was able to lead her normal life after the accident.

Viewing the evidence in a light most favorable to the nonmoving party, the threshold issue could not be determined as a matter of law because there is a factual dispute over the nature and extent of plaintiff's injuries that is material to the determination as to whether she suffered a serious impairment of an important body function under MCL 500.3135. Therefore, the threshold question of whether there was a serious impairment of bodily function is for the jury to

---

[3] Defendant does not dispute that the use of one's neck and back are important body functions under the second prong of *McCormick*.

decide. See *Chouman*, 293 Mich App at 444.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher