MARTIN *v.* JONES.

1. MASTER AND SERVANT—LIABILITY OF MASTER FOR ACTS OF SERV-
ANT—GASOLINE FILLING STATION OPERATOR—SHOOTING.

In action by customer, shot by operator of a gasoline
filling station, against the operator and corporate owner of
the station for damages caused by the shooting, corporation
was not liable where it was not one of operator's duties to
be armed, it does not appear operator shot to protect its
property nor to further the company's business, the only
reason for shooting being either to injure plaintiff after an
argument or to protect himself from plaintiff.

2. SAME—WILFUL AND MALICIOUS ACT OF SERVANT—LIABILITY OF
MASTER.

Where the servant does a wilful and malicious act while en-
gaged in his master's work, but outside of his authority,
as where he steps aside from his employment to gratify some
personal animosity or to accomplish some purpose of his own,
the master is generally not liable as such an act is the per-
sonal tort of the servant.

3. APPEAL AND ERROR—MASTER AND SERVANT—INDEPENDENT CON-
TRACTOR—QUESTIONS REVIEWABLE.

Where corporate defendant, owner of gasoline filling station,
is determined to be not liable for damages sustained by plain-
tiff when shot by defendant operator even though latter was
an employee, question as to whether the operator was an
employee or an independent contractor is not considered.

Appeal from Wayne; Merriam (DeWitt H.), J.
Submitted April 14, 1942. (Docket No. 40, Calen-
dar No. 41,829.) Decided July 1, 1942.

Case by Oscar Martin against Larry Jones and
Standard Oil Company, an Indiana corporation,
for damages for personal injuries sustained when
shot by defendant Jones. Verdict for plaintiff.
Judgment *non obstante veredicto* as to defendant

Standard Oil Company. Judgment for plaintiff against defendant Jones. Plaintiff appeals. Affirmed.

*Bratton & Bratton,* for plaintiff. ·

*Kerr, Lacey & Scroggie,* for defendant Standard Oil Company.

NORTH, J. Plaintiff drove into a Detroit Standard Oil Company station operated by defendant Jones for the purpose of buying some oil for his car which was then being driven by his son Jack. An argument developed between Jones and plaintiff. Plain, tiff contends the controversy began because he objected to Jones putting bulk oil in plaintiff's motor when he had requested oil from a sealed can; that Jones then began to curse him. Jones says that plaintiff began the trouble by passing dirty remarks about Standard Oil Company stations and their service; that plaintiff began to call Jones names and that because of his actions Jones thought plaintiff was connected with a gasoline price war then going on. Plaintiff paid Jones for the oil and his son Jack drove him out of the station. For some reason, plaintiff had his son stop the car and got out and walked back across the street to the station; plaintiff says he thought Jones had forgotten he had paid him since Jones followed the car out to the street. · Jones had gone back to his station at that time. The two continued to argue. Jones then backed away 20 or 25 feet, without warning pulled out a gun and shot plaintiff in the abdomen, inflicting a painful and almost fatal wound.

Plaintiff brought this action to recover damages against Jones and the Standard Oil Company for the attack, charging that Jones was the agent of

the oil company "and that the happening herein related occurred during the due course of his employment and regular discharge of his duties." Jones contended that he acted in self-defense since he thought plaintiff had a gun in his pocket. The Standard Oil Company put forth several defenses, chief of which were that Jones was an independent contractor since it had leased the station to him; and even if it were found Jones were its agent, the shooting was a deliberate act and did not arise out of the course of his employment. The trial judge held the Standard Oil Company's motion for directed verdict under advisement under the Empson act, 3 Comp. Laws 1929, § 14531 (Stat. Ann. § 27.1461), and allowed the case to go to the jury. The jury found against both defendants. Thereafter the trial judge ordered judgment *non obstante veredicto* as to the Standard Oil Company on the two grounds above noted. Plaintiff appealed from the judgment in favor of the Standard Oil Company. Defendant Jones did not appeal.

Was Jones acting within the scope of his authority, even if it were to be conceded he was a servant of the oil company when he shot plaintiff? It is argued by plaintiff that Jones did shoot within the scope of his duties as manager of the oil station. Plaintiff cites several cases to support his contention. However, none of these cases seem to be directly in point. *Cook* v. *Railroad Co.*, 189 Mich. 456, involved a night watchman employed to guard his master's property. The court held there that it was a question for the jury to decide whether the employee shot in order to protect his master's property or if he shot in defense of himself. Here, it does not appear that Jones shot to protect the property of the Standard Oil Company though he did feel plaintiff might be connected with a gasoline

price war then going on; nor did he shoot to further the oil company's business in any way; nor was it one of his duties to be armed. The sale of oil was part of his duty, but Jones did not shoot in order to promote the sale of oil. Rather, the argument caused the shooting. The present case comes within the language of this court in *Stone* v. *Sinclair Refining Co.*, 225 Mich. 344, where we quoted 26 Cyc. p. 1527: "On the other hand, where the servant does a wilful or malicious act while engaged in his master's work, but outside of his authority, as where he steps aside from his employment to gratify some personal animosity or to accomplish some purpose of his own, the master is generally not liable." Here, Jones had no reason to shoot plaintiff outside of a personal desire either to injure plaintiff or else to protect himself from plaintiff. There was no basis on which the jury might find that Jones was furthering his master's interests by shooting plaintiff. In all the cases cited by plaintiff, the servant might in some way have been held to be promoting his master's business by his action, or else it was part of the servant's duties to carry firearms. *Anderson* v. *Schust Co.*, 262 Mich. 236, at 240, holds:

"The true rule is that for a positive wrong by a servant beyond the scope of the master's business intentionally or recklessly done, the master cannot be held liable. Such acts may constitute personal torts of the servant, but the master is not responsible."

Since this above holding would bar plaintiff's recovery against defendant Standard Oil Company even if plaintiff proved Jones were its employee, we need not go into the question of whether or not Jones was an employee or an independent contractor.

The judgment entered in the trial court must be affirmed, with costs to defendant appellee.

CHANDLER, C. J., and BOYLES, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., took no part in this decision.