VINSON v. THOMAS.

1. MASTER AND SERVANT—MASTER'S LIABILITY FOR SERVANT'S TORT.
   In order to hold a master liable for the tort of his servant in committing an assault upon a third person the servant must have been acting within the scope of his employment.

2. SAME—ASSAULT BY BARTENDER.
   Where evidence showed that assault committed upon plaintiff by defendant bartender was outside of bar of defendant owner and that it was not committed while plaintiff was being evicted from bar or in owner's presence, the owner was properly held not liable in damages since the bartender was not then acting within the scope of his employment.

Appeal from Wayne; Webster (Clyde I.), J. Submitted April 11, 1947. (Docket No. 64, Calendar No. 43,625.) Decided May 16, 1947.

Case by Henry Vinson against Harry Thomas, doing business as Royal Blue Bar, and Robert Dancey for damages caused by assault and battery. Verdict for plaintiff against both defendants. Judgment on verdict against defendant Dancey and of no cause for action against defendant Thomas. Plaintiff appeals. Affirmed.

*Dann, Atlas, Tilchin & Bloom,* for plaintiff.

*Loomis, Jones, Piper & Colden* (*George Stone,* of counsel), for defendant Thomas.

BOYLES, J. Plaintiff sued the defendants to recover damages for an assault and battery alleged

Liability of principal to third person for tort of servant, see 2 Restatement, Agency, § 228 *et seq.*

to have been committed in ejecting him from defendant Thomas' place of business in Detroit. The case was submitted to a jury, resulting in a verdict for $2,000 against both defendants. The court set aside the verdict as to defendant Thomas, judgment was entered against the defendant Dancey for $2,000 and in favor of defendant Thomas for no cause of action. Plaintiff appeals, claiming judgment should have been entered on the verdict, and against both defendants.

Thomas was the owner of a place called the Royal Blue Bar, where intoxicating liquors were sold for consumption on the premises, and held a license of the State liquor control commission for that purpose. Defendant Dancey was his bartender. According to plaintiff's testimony, "in 1942 about 9 p.m." he went into the Royal Blue Bar, that he was not intoxicated, that he purchased beer for himself and two others, that bartender Dancey told him "You had better quit drinking, or else you won't be able to work," that he started out the door, stopped to talk to someone, and that this is what then happened:

"Robert Dancey, at that time I was standing talking to him, he passed me with a white apron on the way out the door. I paid no attention, yet—and I walks on out, and just as I walked out the door he was standing with his back against the right side of the door, facing on the outside, and just as I went to step off—his hands were under the apron. I ain't thought nothing of it. I started out. And when I come out, I saw he was backed up against the wall. Robert Dancey was backed up on the outside door, backed up against the door. Just as I went to step off, and before I could look around, he came out from under the apron with something and struck me right in the eye. There was no conversation between me and Dancey. * * *

"I had no conversation with Mr. Dancey other than that conversation. I did not resist him when he told me to get out. I ain't heard him tell me to get out, but I could tell the way he was mad; I walked on out. I wasn't drunk, but I had a couple of drinks; I had a couple of drinks. I wasn't staggering."

On cross-examination, the plaintiff further testified:

"I had no argument with the bartender. There were no words at all. He served me a drink. I paid for the drink. I walked out of the door. And he came outside and struck me in the eye. I don't know why. I had no argument with this man before this day. I knowed his face, but not by name. He had served me a drink before. I did not talk with any of the waitresses, or anybody else, in the bar that night. No more than the two girls, and a couple of gentlemen. I don't know who the two girls were; they knew me, but I don't know them. I ordered a drink and ordered them one too. I did not have an argument with anyone else in the bar that night. I know nothing about any other argument; I wasn't only in there 10 or 15 minutes. During the 10 or 15 minutes I was there everything was peaceful and quiet.

"The bartender came outside of the place and struck me in the eye. I don't know what he hit me with; he came from under his apron with something. The way it looked to me, like when it came out, it was a blackjack."

Plaintiff offered no other testimony to establish the alleged assault and battery. At the conclusion of plaintiff's proofs, counsel for the defendants moved as follows:

"Just for the record, I will make a motion to dismiss, but I am going to put the defendant on immediately."

The court denied the motion. The motion was not argued and no reason was assigned for the motion or the denial.

Defendant Dancey was thereupon sworn and testified that the plaintiff came into the Royal Blue Bar, started to annoy two ladies,—

"So I asked him out. He won't go. Then I asked him out again. He won't go. So I walked around behind the bar. I used some force to put him out, but I did not go out of the place, I just shoved him out the door. I really did not strike him.

"Q. When you say you used some force to put him out, do you mean you took him by his arms and pushed him toward the door?

"A. That is right. I did not go outside of the door at all, I remained in the bar at all times."

However, on cross-examination, Dancey, admitted having testified in his defense in a case charging him with a criminal offense that the assault and battery occurred outside of the Royal Blue Bar, that he went outside of the door, that the plaintiff called him names, they started to fight, that he there hit the plaintiff, and admitted that he was outside the door about a minute and a half. There is no claim that plaintiff was assaulted while in the building or while he was on the way out. There is no claim that he attempted to re-enter. The assault and battery, if any, occurred after plaintiff was outside the building.

There is no testimony to the effect that the defendant Thomas, the owner of the establishment, was present, either in the Royal Blue Bar, or outside, when plaintiff was ejected from the place, or when the alleged assault and battery took place. The liability of Thomas is predicated on the theory that he must answer in damages for the tort of his servant. This, in turn, must depend upon whether

Dancey, *at the time of the assault,* was acting within the scope of his employment, as the servant of Thomas. *Ducre* v. *Sparrow-Kroll Lumber Co.,* 168 Mich. 49 (47 L. R. A. [N. S.] 959, 2 N. C. C. A. 596); *Nevins* v. *Roach,* 249 Mich. 311; *Martin* v. *Jones,* 302 Mich. 355. Plaintiff alleges, and the defendants admit, that Dancey was the "agent" of defendant Thomas. However, the declaration does not allege, nor do the defendants admit, that Dancey was acting within the scope of his authority when the assault was committed.

At the conclusion of all the proofs in the case, counsel for the defendants moved the court as follows:

"I would like to renew my motion now as to the defendant Thomas. I do not think there is any testimony whatsoever to connect him up with it. Under the plaintiff's own testimony that the fracas happened, or that the accident happened outside the bar, you could not connect the owner with it. He was clearly, if there was any agency whatsoever, outside of the scope if he got out that far."

The court reserved decision on the motion, under the statute.* After the court began to charge the jury, the following occurred:

"*Mr. Colden* (attorney for defendants): I do not mean to interrupt the court, but I would like to make a motion under the Empson act before you charge the jury; motion for defendant notwithstanding the judgment (*sic*) of the jury.

"*The Court:* I do not think you have to make that now, but you can.

"*Mr. Colden:* All right."

---

* See 3 Comp. Laws 1929, § 14531 *et seq.,* as amended by Act No. 44, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14531, Stat. Ann. and Stat. Ann. 1946 Cum. Supp. § 27.1461 *et seq.*).—REPORTER.

Thereupon the court continued to charge the jury as to the law applicable to the case, in the course of which the court said:

"If Dancey put the plaintiff out of the place, and after the act of putting him out was completed, he goes out, or while he is still out he throws something at him, or hits him with something that he pulls out from under his apron, of course that would be an act that was unjustified, would be a tort committed by the defendant Dancey for which the defendant Thomas would not be liable.    *    *    *

"In other words, the employer is liable for acts performed by the agent in the course of the employment, responsible directly for his acts, but not for acts committed outside the scope of his employment.    *    *    *

"The question of whether the defendant Dancey was acting within the scope of his authority is a question of fact for you, based upon the circumstances of the case."

At the conclusion of the charge, counsel for the defendants again orally moved the court as follows:

"Just for the record, I will renew my motion notwithstanding the verdict of the jury."

For obvious reasons the court did not then pass upon this untimely motion, but submitted the case to the jury. After the jury had returned a verdict for $2,000 against both defendants, counsel for the defendants again moved the court, this time as follows:

"May it please the court, I will renew my motion at this time as to the defendant Thomas first. I do not believe there is any evidence whatsoever from which the defendant Thomas could be linked in with this verdict. The testimony has been read now three times, and once to the jury; the accident,

if it was an accident, or a deliberate striking, occurred outside of the bar, definitely outside of the scope of the defendant Thomas' purview, outside of his place entirely, and we have got to draw the line somewhere.''

Thereupon the trial court set aside the verdict as against the defendant Thomas and entered judgment on the verdict only as against the defendant Dancey. In so doing, the court said:

''I do not care what you call it, whether it is a motion now made, considered at the close of the plaintiff's case or at the close of the defendant's case, or at the time the motion was made; I am satisfied now that this plaintiff should not recover against the owner; that under the declaration, the opening statement of counsel, and the testimony of the plaintiff, the plaintiff cannot recover under Michigan decisions against the owner. I do not care what form it takes now. I am setting aside this verdict that was granted by the jury against the owner, both on the ground that I reserved it under the statute at the close of the plaintiff's case, that I reserved it under the statute at the close of the defendant's case, and that I decided it when you argued the motion before, after the verdict.''

In their briefs counsel discuss at length whether defendants' motion made at the close of plaintiff's case should have been granted. However, that is not controlling of decision. Out of the welter of motions made at various stages of the case we reach the same conclusion as announced by the circuit judge—that it matters not in what light these various motions might be considered. The meritorious question here, which under the circumstances should control decision, is whether there is testimony to justify judgment against the defendant Thomas for the tort of his servant. Our review of the record

is convincing that there is no testimony to show Dancey was acting as the servant of Thomas and in the scope of his employment when he assaulted the plaintiff. The judgment entered, no cause of action against Thomas, notwithstanding the verdict of the jury, was proper, and is affirmed, with costs.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, REID, NORTH, and DETHMERS, JJ., concurred.