# STATE OF MICHIGAN

# COURT OF APPEALS

ANGELA RENEE WARE,

        Plaintiff-Appellee,

V

BRONSON METHODIST HOSPITAL,

        Defendant-Appellant,
and

PATRICIA MARIE WARK,

        Defendant.

UNPUBLISHED
November 4, 2014

No. 307886
Kalamazoo Circuit Court
LC No. 2010-000635-NZ

Before: RONAYNE KRAUSE, P.J., and HOEKSTRA and WHITBECK, JJ.

PER CURIAM.

Defendant, Bronson Methodist Hospital, appeals as on leave granted[1] the trial court's order denying its motion for summary disposition in favor of plaintiff, Angela Renee Ware, who is currently known as Angela Renee Kratzer (Kratzer). Kratzer sued the Hospital on vicarious liability, negligence, and breach of contract theories after the Hospital's employee, defendant Patricia Marie Wark, who is currently known as Patricia Marie Ware (Patricia Ware), accessed Kratzer's medical files and provided confidential patient information to Kratzer's ex-husband, Gregory Ware. We affirm in part, reverse in part, and remand.

## I. FACTS

### A. BACKGROUND FACTS

In March 2009, Kratzer saw doctors at Bronson Neurological Services, and indicated on her privacy authorization form, in all capital letters and with two exclamation points, that the Hospital should not share information with her ex-husband's then girlfriend, Patricia Ware.

---

[1] *Ware v Bronson Methodist Hosp*, 494 Mich 880 (2013).

-1-

Patricia Ware was a nurse in the Hospital's intensive care unit. Kratzer testified at her deposition that nurses told her that the Hospital had policies about patient records and received training in protecting patient confidentiality.

Kratzer was admitted to the Hospital in August 2009, to deliver a child. Despite the nurses' assurances, Patricia Ware accessed Kratzer's medical records on four days in August 2009. Kratzer was admitted to the Hospital's Neuro Intensive Care Unit in November 2009. Kratzer testified that she told her nurses that she was concerned that Patricia Ware might try to access her records, and her nurses told her that it was not possible for Patricia Ware to do so because only doctors and the shift nurse can access a patient's records. However, Patricia Ware accessed Kratzer's medical records on three days in November. On the third day, a Hospital employee informed Kratzer that Patricia Ware had accessed her records.

The Hospital subsequently suspended and fired Patricia Ware. At deposition, Kratzer testified that Patricia Ware was not one of her nurses and that Patricia Ware's actions were not related to providing her with nursing care. According to Kratzer's complaint, Patricia Ware shared information from Kratzer's medical records with Gregory Ware. Gregory Ware then used the information in a custody dispute with Kratzer.

## B. PROCEDURAL HISTORY

On November 17, 2010, Kratzer filed a complaint against the Hospital and Patricia Ware. In pertinent part, Kratzer asserted claims of invasion of privacy and intentional infliction of emotional distress against Patricia Ware, and asserted that the Hospital was vicariously liable for Patricia Ware's conduct. Kratzer also asserted that the Hospital was negligent and breached an implied contract to prohibit Patricia Ware from accessing her medical records.

The Hospital filed motions for summary disposition under MCR 2.116(C)(7), (8), and (10). The Hospital asserted that it was not liable for Patricia Ware's conduct, which was outside the scope of her employment. It also asserted that the statute of limitations barred Kratzer's negligence and breach of contract claims because they sounded in medical malpractice.

The trial court denied the Hospital's motion regarding Kratzer's invasion of privacy and intentional infliction of emotional distress claims, reasoning that whether Patricia Ware acted within the scope of her employment was a question of fact because she "had access to the records through her employment . . . ." The trial court denied the Hospital's motion regarding Kratzer's negligence and breach of contract claims, reasoning that the case did not sound in medical malpractice because it does not necessarily raise questions of medical judgment.

## II. SCOPE OF EMPLOYMENT

### A. STANDARD OF REVIEW

This Court reviews de novo the trial court's determination on a motion for summary disposition.[2] A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." The trial court must consider all the documentary evidence in the light most favorable to the nonmoving party.[3] A genuine issue of material fact exists if, when viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on the issue.[4]

### B. LEGAL STANDARDS

Under the doctrine of respondeat superior, an employer may be vicariously liable for an employee's torts committed within the scope of his or her employment.[5] But the employer is not generally liable for torts that are beyond the scope of the employer's business.[6] An act is outside the scope of employment if the employee acts for personal purposes that do not further the employer's interests,[7] such as from personal animosity.[8]

### C. APPLYING THE STANDARDS

The Hospital contends that there is no question of fact concerning whether Patricia Ware acted outside the scope of her employment when she accessed Kratzer's medical files because Patricia Ware's tort was independent and did not further the Hospital's interests. We agree.

An action may further the employer's business even when it is contrary to the employer's instructions.[9] Here, there is no question that Patricia Ware acted against the Hospital's instructions when she accessed Kratzer's medical files. But reasonable minds could not conclude that Patricia Ware's action furthered the Hospital's interests. There is no evidence that the Hospital gained anything by Patricia Ware's action. Patricia Ware gained information for

---

[2] *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999); *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013).

[3] MCR 2.116(G)(5); *Maiden*, 461 Mich at 120.

[4] *Gorman*, 302 Mich App at 116.

[5] *Hamed v Wayne Co*, 490 Mich 1, 11; 803 NW2d 237 (2011); *Helsel v Morcom*, 219 Mich App 14, 21; 555 NW2d 852 (1996).

[6] *Hamed*, 490 Mich at 11; *Zsigo v Hurley Med Ctr*, 475 Mich 215, 221; 716 NW2d 220 (2006).

[7] *Hamed*, 490 Mich at 11.

[8] *Martin v Jones*, 302 Mich 355, 358; 4 NW2d 686 (1942); *Bryant v Brannen*, 180 Mich App 87, 98-100; 446 NW2d 847 (1989).

[9] *Hamed*, 490 Mich at 11.

use in her then-boyfriend's custody dispute. Patricia Ware's personal motivations for accessing Kratzer's medical files were not merely *a* motivation for her actions, they were the *sole* motivation. Thus, there is no question of fact that Patricia Ware acted for personal reasons that did not further the Hospital's interests.

Kratzer responds that Patricia Ware acted within the scope of her employment because her employment included accessing patients' medical files, and she could only access Kratzer's medical files at work. We disagree that these facts created genuine issues of material fact that precluded summary disposition.

Michigan will not hold an employer liable for an employee's action merely because the existence of the employment relationship made it easier for the employee to accomplish a tort.[10] Here, it is undisputed that Patricia Ware was only able to access Kratzer's medical files because she was the Hospital's employee, and that she accessed the files by using her employee identification number in the manner in which she normally accessed patient files during her daily work. These facts do not establish vicarious liability. Though the existence of the employment relationship between the Hospital and Patricia Ware made it easier for Patricia Ware to invade Kratzer's privacy, under Michigan law, these facts do not establish that Patricia Ware's action was within the scope of her employment.

We conclude that, viewing the evidence in the light most favorable to Kratzer, reasonable minds could not differ concerning whether Patricia Ware acted in furtherance of the Hospital's interests. Thus, the Hospital was entitled to summary disposition under MCR 2.116(C)(10) because Patricia Ware's actions were not within the scope of her employment.

## III. MEDICAL MALPRACTICE

### A. STANDARD OF REVIEW

This Court reviews under MCR 2.116(C)(7) whether the statute of limitations bars a claim of ordinary negligence because it sounds in medical malpractice.[11] We review de novo the trial court's determination.[12] This Court considers the contents of the plaintiff's complaint to be true, unless it is contradicted by the documentary evidence.[13]

### B. LEGAL STANDARDS

A claim sounds in medical malpractice if the claim (1) occurs within the course of a professional relationship and (2) raises questions involving medical judgment.[14] If the action

---

[10] *Zsigo*, 475 Mich at 226.

[11] *Bryant v Oakpointe Villa Nursing Centre*, 471 Mich 411, 419; 684 NW2d 864 (2004).

[12] *Id*.; *Scherer v Hellstrom*, 270 Mich App 458, 461; 716 NW2d 307 (2006).

[13] *Bryant*, 471 Mich at 419.

[14] *Id*. at 422.

occurred during the course of a professional relationship and raises questions of medical judgment, then "the action is subject to the procedural and substantive requirements that govern medical malpractice actions."[15] If the plaintiff's claim sounds in medical malpractice and he or she did not take the procedural steps necessary to preserve a medical malpractice claim, the statute of limitations bars the claim.[16]

To determine whether a claim raises questions of medical judgment, courts must consider the issue of duty.[17] A claim involves a medical judgment if it concerns "the failure of a member of the medical profession . . . to fulfill the duty to exercise that degree of skill, care and diligence exercised by members in the same profession, practicing in the same or similar locality, in light of the present state of medical science."[18] If "the reasonableness of the action can be evaluated by the jury only after having been presented the standards of care pertaining to the medical issues . . . ," then the claim sounds in medical malpractice.[19] In contrast, if a claim "raise[s] issues that are within the common knowledge and experience" of the finder of fact, then the claim sounds in negligence.[20]

## C. APPLYING THE STANDARDS

The Hospital contends that Kratzer's claims sound in medical malpractice because the questions of who needs the ability to access medical records and how much access to those records can be restricted safely are questions of medical judgment. Kratzer contends that her claims do not concern medical judgment because they do not concern medical treatment. We conclude that some of Kratzer's claims concern medical judgment, and some do not.

There is no question that this case meets the first element, professional relationship. We are only concerned with whether Kratzer's claims concern medical judgment. In order to determine whether Kratzer's claims do concern medical judgment, we must consider the duties that she claims the Hospital owed to her.[21]

In her complaint, Kratzer claimed that the Hospital owed her the following duties:

---

[15] *Id.*

[16] *Lockwood v Mobile Med Response, Inc*, 293 Mich App 17, 27; 809 NW2d 403 (2011).

[17] See *Bryant*, 471 Mich at 423-424.

[18] *Id.* at 424, quoting *Adkins v Annapolis Hosp*, 116 Mich App 558, 564; 323 NW2d 482 (1982) (quotation marks and additional citations omitted).

[19] *Bryant*, 471 Mich at 423.

[20] *Id.*, quoting *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 46; 594 NW2d 455 (1999).

[21] See *Bryant*, 471 Mich at 425-432 (analyzing the plaintiff's claims individually).

a. To reasonably anticipate threats to the security of a patient's protected health information from unauthorized access and unauthorized or unlawful disclosure of such information.

b. To adopt and enforce appropriate policies and procedures for safeguarding, protecting, and ensuring the confidentiality of a patient's protected health information from unauthorized access.

c. To implement training programs for employees about how to safeguard, protect, and ensure the confidentiality of a patient's protected health information from unauthorized access.

d. To adopt and enforce appropriate policies and procedures for limiting disclosures of a patient's protected health information to the minimum necessary to accomplish their intended purpose.

e. To reasonably limit which members of its workforce may have access to a patient's protected health information for treatment, payment, and health care operations, based on those who need access to the information to do their jobs.

f. To adopt and enforce appropriate policies and procedures for monitoring and/or auditing unauthorized and unlawful access to (and disclosure of) a patient's protected health information.

g. To implement training programs for employees about how to monitor and/or audit unauthorized and unlawful access (and disclosure of) a patient's protected health information.

Kratzer alleges that the Hospital owed her two distinct duties to protect her confidential information from unauthorized disclosure: (1) the duty to *adopt* procedures to ensure the confidentiality of her health information (including by limiting the ability to access to her health information to only those employees who need the information to do their jobs), and (2) the duty to *enforce* the policies it had in place to keep her health information confidential.

1. ADOPTION OF PROCEDURES TO ENSURE CONFIDENTIALITY

We conclude that the issue of whether the Hospital adopted adequate procedures to ensure confidentiality, pursuant to various state and federal statutes, involves a question of medical judgment.

As an initial matter, we note that this Court's decision in *Saur v Probes*[22] does not control here. In *Saur*, the Court considered whether a plaintiff could bring a malpractice action for a

---

[22] *Saur v Probes*, 190 Mich App 636; 476 NW2d 496 (1991).

psychiatrist's breach of patient confidentiality.[23] This Court held that a cause of action existed because statutes, common law, and codes of professional conduct may create evidence of professional malpractice.[24] What this Court did *not* hold is that violations of statutes, common law, and professional conduct *necessarily* create issues of professional malpractice. Thus, *Saur* does not answer the question presented here.

Therefore, we turn to the basic standard that the Michigan Supreme Court articulated in *Bryant*: does this claim involve the standards of care pertaining to medical issues?[25] We conclude that it does.

Here, there is no question that the Hospital had policies and procedures in place to protect confidentiality. Kratzer asserts that those policies and procedures were not *appropriate* and that the Hospital's policies did not comply with various state and federal privacy statutes. To determine whether the Hospital's policies and procedures were appropriate, the jury would necessarily have to balance what information doctors, nurses, and medical staff require to make medical decisions against the patients' rights to confidentiality under various laws.

Kratzer's claim that the Hospital should have adopted procedures that limited access of her information to only those employees who need the information to do their jobs illustrates that these judgments are ultimately medical in nature. A jury cannot determine whether an employee will need health information to do his or her job without knowing and understanding what information several types of hospital employee—doctors, nurses, and other medical staff— reasonably require to make medical decisions. For the jury to be able to evaluate whether the Hospital appropriately balanced Kratzer's privacy rights as a patient with the need of doctors, nurses, and other employees to have quick access to her health information to provide her with medical treatment, the jury will need to understand *multiple* medical standards of care. These claims will require expert testimony on medical standards of care. Thus, they concern medical judgments.

Because the jury can only evaluate the appropriateness of the Hospital's actions if the parties present evidence on standards of care pertaining to the medical issues, we conclude that a claim that the Hospital failed to adopt appropriate procedures to protect patient confidentiality sounds in medical malpractice.[26] As a result of Kratzer's failure to comply with medical malpractice procedures, Kratzer's claims that the Hospital did not adopt appropriate procedures are time-barred.[27] Thus, the trial court should have granted summary disposition on Kratzer's negligence claims related to whether the Hospital adopted appropriate confidentiality procedures.

---

[23] *Id*. at 637.

[24] *Id*. at 638-639.

[25] *Bryant*, 471 Mich at 423.

[26] See *Id.*

[27] See *Lockwood*, 293 Mich App at 27.

## 2. ENFORCEMENT OF POLICIES AGAINST UNAUTHORIZED ACCESS

The Hospital contends that whether the Hospital enforced its policies and protected against unauthorized access involves issues of medical judgment because issues of the supervision of medical staff always involve issues of medical judgment. We disagree with this blanket assertion, and conclude that the issue of whether the hospital enforced its own policies and protected Kratzer against unauthorized access of her protected health information does not sound in medical malpractice.

Courts routinely conclude that a patient's allegation that a hospital improperly trained or supervised hospital employees who provided medical care involves questions pertaining to medical issues.[28] Courts decide these cases on the basis of the basic question that the Michigan Supreme Court articulated in *Bryan*: does this claim involve the standards of care pertaining to medical issues?[29]

Kratzer's claim that the Hospital negligently failed to enforce its own procedures does not involve medical standards of care. The claim presents the question of whether the Hospital negligently failed to enforce *its preexisting* policies and practices, and whether this failure led to Patricia Ware's ability to access Kratzer's private health information several times between August and November 2009 and to Patricia Ware's disclosure of that information. Whether the Hospital could have adopted *better* procedures (an issue that sounds in malpractice, for the reasons previously stated) is a distinct question from whether the Hospital enforced its *existing* procedures. The issue is not whether the Hospital negligently failed to train or supervise Patricia Ware's performance of her job as a nurse: it is undisputed that Patricia Ware was not providing Kratzer with medical care. Thus, the question is whether the Hospital negligently failed to follow its own procedures to prevent Patricia Ware from accessing Kratzer's confidential information, given Kratzer's warnings and Patricia Ware's lack of involvement in Kratzer's medical care. The resolution of this issue will not require expert testimony on medical standards of care.

Because the jury can evaluate Kratzer's claim that the Hospital negligently failed to enforce its existing policies without testimony on medical standards of care, we conclude that this claim does not sound in medical malpractice.[30] Thus, the trial court properly declined to grant summary disposition on this portion of Kratzer's negligence claims.

---

[28] See, e.g., *Bryant*, 471 Mich at 426-429 (failing to train nurses to recognize and protect against risk of asphyxiation); *Dorris*, 460 Mich at 43 (negligent administration of medication and subsequent failure to monitor and supervise patient); *Bronson v Sisters of Mercy Health Corp*, 175 Mich App 647, 648-649, 652; 438 NW2d 276 (1989) (failure to supervise competency of physicians performing surgery).

[29] *Bryant*, 471 Mich at 423.

[30] See *Id*.

## IV. BREACH OF IMPLIED CONTRACT

### A. STANDARD OF REVIEW AND ISSUE PRESERVATION

This Court reviews de novo a trial court's ruling on a motion for summary disposition.[31] A party may move for summary disposition under MCR 2.116(C)(8) if the opposing party has failed to state a claim on which relief can be granted. When a party moves the trial court for summary disposition under MCR 2.116(C)(8) and (10) and the trial court considered documents outside the pleadings, we review the trial court's decision under MCR 2.116(C)(10).[32] As stated above, a party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law."

"Generally, an issue is not properly preserved if it is not raised before, addressed, or decided by the circuit court or administrative tribunal."[33] But this Court should not punish a party for the omission of the trial court.[34]

Here, the Hospital contended below that it was entitled to summary disposition on Kratzer's claim of "breach of implied contract" on the basis that the statute of frauds required any contract for health care to be in writing. The trial court did not address this issue. However, we will not punish the Hospital for the trial court's failure to address the issue.

### B. LEGAL STANDARDS

The statute of frauds requires certain types of agreement to be in a writing signed by the party against whom it will be enforced.[35] This includes "[a]n agreement, promise, contract, or warranty of cure relating to medical care or treatment."[36]

### C. APPLYING THE STANDARDS

The Hospital contends that the trial court improperly failed to grant its motion for summary disposition on Kratzer's implied contract claim. We agree.

---

[31] *Maiden*, 461 Mich at 118.

[32] *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007).

[33] *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005).

[34] *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

[35] MCL 566.132; *Crown Technology Park v D&N Bank, FSB*, 242 Mich App 538, 548; 619 NW2d 66 (2000).

[36] MCL 566.132(1)(g). See *Powers v Peoples Community Hosp Auth*, 183 Mich App 550, 554; 455 NW2d 371 (1990).

Here, Kratzer asserts that the Hospital breached an *implied* contract with her: that is, there is no written contract at issue in this case. Kratzer's allegations regarding patient confidentiality relate to her medical care and treatment. Thus, because Kratzer's claims do not involve a signed writing, Kratzer may not enforce a contract in this instance.

We conclude that the trial court should have dismissed Kratzer's implied contract claim under MCR 2.116(C)(8) or (10). Kratzer failed to state a claim on which relief could be granted and did not show an issue of material fact that would prevent the Hospital from being entitled to judgment as a matter of law.

## V. RESPONSE TO THE DISSENT

In this opinion, we have reached two conclusions. First, in Section III(C)(1), we conclude that for the jury to determine whether the Hospital should have *adopted* further procedures to ensure patient confidentiality will require the jury to understand medical standards of care. Second, in Section III(C)(2), we conclude that determining whether a hospital *enforced* its pre-existing procedures does not require the jury to understand medical standards of care. If we have read the dissent correctly, the dissent disagrees with our first conclusion but agrees with our second. As we understand the dissent, our dissenting colleague reasons that adequately safeguarding a patient's right to privacy does not concern medical standards of care and does not require the exercise of medical judgment.

If we read the dissent correctly, the dissent conflates two distinct issues (the *adoption* of procedures and the *enforcement* of procedures) into a single issue, patient privacy. The dissent states, accurately, that ". . . patients have a right to keep confidential the details of their medical care and treatment" and that "[p]rivate medical information must be kept private." Certainly this is so and nowhere do we state otherwise.

Thus, patient privacy is not the issue in this case; it is a given. At issue are Kratzer's claims regarding the privacy policies that the Hospital adopted and how the Hospital enforced these policies. Thus, we must closely consider and analyze these individual claims.[37] Doing so in this case rather plainly illustrates that Kratzer is asserting two distinct types of claims regarding her privacy: Kratzer contends not only that Patricia Ware actually invaded her privacy and that the Hospital negligently failed to *enforce* its privacy policies, but that the Hospital was also responsible for that invasion because it should have *adopted* stricter privacy policies.

Again, we agree with the dissent's statement of the fundamental principle of patient confidentiality. To borrow the dissent's example from *DeMay v Roberts*, in which a doctor brought "an unprofessional young unmarried man" to the plaintiff's birthing bed and violated her right to privacy,[38] the jury could determine whether such an action shocked their senses of right, justice, and propriety without resort to the medical standards surrounding the doctor's

---

[37] See *Bryant*, 471 Mich at 425-432 (analyzing the plaintiff's claims individually).

[38] *DeMay v Roberts*, 46 Mich 160, 165-166; 9 NW 146 (1881).

professional relationship with the plaintiff. Similarly, here, the jury can determine without medical testimony whether the Hospital's negligent *enforcement* of its policies resulted in Patricia Ware's unauthorized and inappropriate accessing and disclosing Kratzer's records, and thus violated Kratzer's right to privacy, without resorting to medical testimony.

However, we simply do not believe that this example applies to Kratzer's claims that the Hospital itself violated Kratzer's right to privacy by failing to adopt stricter policies. Our reasoning is simple: Kratzer's claim that the Hospital should have adopted stricter privacy policies requires the jury to consider and answer several questions not raised in *DeMay*. To evaluate the sufficiency of the Hospital's confidentiality policies, the jury must consider not only whether the Hospital had privacy policies in place—it did—but it must also consider what additional privacy policies the Hospital reasonably should have had in place in order to protect Kratzer.

We cannot fathom how the Hospital—or any hospital—could formulate a privacy policy without substantial, direct input from doctors, nurses, and medical staff. Similarly, we cannot fathom how the jury would determine what more the Hospital should have reasonably done without understanding the medical standards of care under which these doctors, nurses, and medical staff operate. In order to do so, the jury must understand *what* information doctors and nurses need, *who* needs that information, *when* they need that information, and from *where* doctors and nurses need to access that information. A jury cannot answer these questions without an explanation of these concepts. And the only explanations can come from the testimony of doctors and nurses concerning what medical information they need in order to do their jobs properly. In other words, the testimony about the sufficiency of the Hospital's privacy policies would necessarily concern medical judgments and medical standards of care.

The dissent contends that the adoption of procedures is an administrative judgment. Certainly the *implementation and enforcement* of previously adopted policies is an administrative task. However, Kratzer's contention that the Hospital did not adopt policies is separate from her contention that it negligently implemented and enforced policies that it had already adopted. Programmers cannot implement a policy that has not been created. Again, we do not believe that any administrative team or information systems department could *adopt* privacy policies and enforcement procedures without consulting with doctors, nurses, and medical staff to answer the questions that so directly relate to medical judgments and decisions.

Therefore, this issue directly involves the standard of care pertaining to medical issues. Neither programmers nor jurors can evaluate what information doctors need to do their jobs on the basis of common knowledge and experience. A jury cannot determine the answers to these important medical questions--*what* information doctors and nurses need, *who* needs that information, *when* they need that information, and from *where* doctors and nurses need to access that information–it would need to address without understanding medical standards of care related to doctors, nurses, and medical staff. Therefore, we cannot agree with the dissent's conclusion that Kratzer's claim regarding the Hospital's failure to *adopt* stricter privacy policies does not sound in medical malpractice. Simply put, it does.

-11-

## VI. CONCLUSION

We conclude that the trial court improperly denied the Hospital's motion for summary disposition under MCR 2.116(C)(10) on Kratzer's claims of invasion of privacy and intentional infliction of emotional distress. The Hospital is not vicariously liable for Patricia Ware's actions because her private, vindictive actions did not advance the Hospital's interests and were not in the scope of her employment. We conclude that the trial court also erred when it failed to dismiss Kratzer's implied contract claim under MCR 2.116(C)(8) or (10).

We further conclude that the trial court improperly denied the Hospital's motion for summary disposition under MCR 2.116(C)(7) relating to Kratzer's claims that the Hospital negligently failed to *adopt* procedures or adopted inappropriate procedures related to patient confidentiality. These issues raise questions of medical judgment because the jury cannot evaluate the reasonableness of the Hospital's action without testimony on medical standards of care.

But we conclude that the trial court properly declined to grant the Hospital's motion for summary disposition on Kratzer's claims that the Hospital negligently failed to *enforce* its existing procedures. These claims do not sound in medical malpractice because testimony on medical standards of care will not be necessary for the jury to understand and resolve the claim.

We affirm in part, reverse in part, and remand. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ William C. Whitbeck

-12-