UNITED STATES ex rel. WALTER
TOEBE CONSTRUCTION
COMPANY, Plaintiff,

v.

The GUARANTEE COMPANY
OF NORTH AMERICA,
Defendant.

Case No. 14–13398.

United States District Court,
E.D. Michigan,
Southern Division.

Signed Dec. 11, 2014.

Chris M. Parfitt, Deneweth, Dugan, Troy, MI, Michelle L. Alamo, Dickinson Wright, Detroit, MI, for Plaintiff.

Jacquelyn A. Klima, Mark M. Cunningham, Kerr, Russell, Detroit, MI, for Defendant.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

DAVID M. LAWSON, District Judge.

Walter Toebe Construction Company, an unpaid contractor on a government construction project, has filed suit against the Guarantee Company of North America USA (GCNA) to collect what is owing to it for Toebe's part of the project. Toebe has alleged several theories of recovery, including a claim under the Miller Act. GCNA, which issued payment and performance bonds and also stepped in to complete the project, has filed a motion to dismiss the complaint alleging that (1) it was filed well outside the applicable statutory one-year limitations period under the Miller Act, 40 U.S.C. § 3133(b)(4); (2) the claim for "breach of duty" in count II asserts no legally cognizable cause of action; and (3) the claim for unjust enrichment is precluded as a matter of law due to the existence of an express contract on the same subject matter. The Court heard oral argument on December 9, 2014, and now concludes that all of the plaintiff's claims must fail, save the claim for unjust enrichment, as explained below. Therefore, the Court will grant in part and deny in part the motion to dismiss.

I.

According to the facts alleged in the complaint, some time before May 21, 2010, the United States Army Corps of Engineers entered into a contract with A/B Electrical & General Contracting Services, Inc. as the prime contractor for construction work relating to the Detroit Arsenal Vehicle Access Point Project in Warren, Michigan. A/B engaged Mavcon, Inc. as a subcontractor. As it was required to do by the terms of the prime contract, A/B obtained payment and performance bonds covering the project from defendant GCNA.

On May 21, 2010, Mavcon entered into a contract with Toebe under which Toebe was to perform certain work relating to

"drilled shaft foundations" involved in the project. Toebe, in turn, engaged Rohrscheib Sons Caissons, Inc. to perform excavation work required for the foundations. During the digging work, Rohrscheib uncovered a buried sewer line that had not been shown on the project plans and drawings provided to Toebe and Rohrscheib by the Corps of Engineers, A/B, and Mavcon. Rohrscheib stopped work and notified Mavcon of the problem, but the Corps of Engineers, A/B, and Mavcon jointly directed Rohrscheib to continue digging and complete the work. During a subsequent concrete pour for the foundations, the sewer line was filled with concrete. A/B and Mavcon did not consult with Toebe about the damage to the sewer line, but engaged a third-party contractor to clear and repair the filled sewer.

On January 25, 2011, Toebe submitted a bill to Mavcon for $365,418, which included amounts for the excavation work done by Rohrscheib. On February 4, 2011, Mavcon paid Toebe approximately $57,000 and informed Toebe that the balance of the amount due was being withheld to cover expenses required to clear and repair the sewer line. On July 28, 2011, Mavcon paid Toebe another $70,000 or so. Toebe submitted several subsequent applications for payment between March 10 and July 7, 2011, none of which were paid in full. Toebe alleges that A/B or Mavcon were paid by the Corps of Engineers for all of the work relating to the drilled shaft foundations.

On May 16, 2011, the Corps of Engineers terminated A/B as the prime contractor and directed GCNA to step in and complete the project under the performance bond. GCNA took over and entered into a contract with Mavcon to complete the work.

On March 23, 2011, Toebe submitted a claim for payment of amounts due to GCNA. Toebe submitted claim updates to GCNA on June 8, 2011 and September 6, 2011. On August 11, 2011, Toebe filed a demand for arbitration of the payment claims naming A/B, Mavcon, and GCNA as defendants, and seeking approximately $500,000 in unpaid amounts that it alleged it was due for its work on the project. GCNA filed an answer to the demand for arbitration on August 15, 2011. Toebe later stipulated to dismiss A/B from the arbitration proceedings. Toebe alleges that "GCNA fully participated in the Arbitration proceedings for almost two years, from August 15, 2011 through June 3, 2013, at no time challenging the jurisdiction of the Arbitration [panel]." A five-day arbitration hearing was held starting on June 10, 2013, at which GCNA "fully participated ... including questioning witnesses." On June 17, 2013, GCNA filed a motion to dismiss. On June 26, 2013, the last day of the hearing, the arbitrators heard oral argument on GCNA's motion to dismiss for lack of jurisdiction. Subsequently, on July 8, 2013, the arbitrators granted the motion and dismissed GCNA from the arbitration.

On October 21, 2013, the arbitrators issued an award in Toebe's favor against Mavcon in the amount of $320,573.97, plus $4,350.00 in arbitration fees. On July 3, 2014, the Macomb County, Michigan circuit court entered a judgment confirming the arbitration award and awarding Toebe $17,426.40 in attorney's fees and costs. Mavcon failed to pay Toebe any of the awarded amount, and, on August 12, 2014, Toebe demanded payment from GCNA under the payment bond. GCNA refused, asserting that Toebe had failed to file suit within the one year limitations period allowed under the Miller Act.

On September 3, 2014, Toebe filed its complaint against GCNA in this Court asserting claims for (1) breach of contract

(count I); (2) breach of the duty to investigate and covenant of good faith and fair dealing (count II); (3) equitable estoppel or equitable tolling (count III); and (4) unjust enrichment (count IV). GCNA has moved to dismiss all the claims.

## II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "allow[s] a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir.2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993)). The Court reads the complaint in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228–29 (6th Cir.1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995)). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Tatum*, 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir.2009). "To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th

Cir.2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court but conclusions may not be unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements' " of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). However, as long as a court can " 'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

### A. Miller Act claim

Toebe's contract claim against GCNA presumably is premised on its status as a third-party beneficiary of the payment bond GCNA issued to the government. The payment bond is governed by the Miller Act. The Miller Act provides that "[e]very person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final exe-

cution and judgment for the amount due." 40 U.S.C. § 3133(b)(1). For recovery on the payment bond itself, the Miller Act is Toebe's exclusive remedy. *See United States ex rel. Cal's A/C & Elec. v. Famous Const. Corp.*, 220 F.3d 326, 329 (5th Cir. 2000) ("[R]ecovery on the bond must be under the Miller Act.").

■ A lawsuit under the Miller Act "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). GCNA argues that the claim is time-barred because Toebe filed its complaint on September 3, 2014, more than three years after it last furnished labor or materials to the project on June 8, 2011. Toebe does not quibble with the timing of its lawsuit, but it contends that equitable tolling or equitable estoppel should apply to the statute of limitations defense, because either the limitations period should be tolled through the end of the arbitration in July 2014, or GCNA should be precluded from raising the limitations defense due to Toebe's reasonable reliance on GCNA's "participation" in the arbitration.

■ "Equitable tolling allows a federal court 'to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Jackson v. United States*, 751 F.3d 712, 718 (6th Cir.2014) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Federal law governs the question. *See United States ex rel. Skip Kirchdorfer, Inc. v. M.J. Kelley Corp.*, 995 F.2d 656, 659 (6th Cir.1993) ("Though the one year time limit in the Miller Act seems to contemplate strict adherence, several circuit courts have held that when a plaintiff technically fails to file suit within the one-year period, his action may nevertheless proceed if the tardy filing may be excused

under the doctrine of equitable tolling.") (collecting cases); *see also Cunningham v. Interlake S.S. Co.*, 567 F.3d 758, 760 (6th Cir.2009) ("Because the statute of limitations for claims of negligence under the Jones Act and of unseaworthiness is based on the Federal Employers' Liability Act, the district court properly refused to apply the Ohio savings statute to toll the statute of limitations on Cunningham's claims.").

■ "To determine whether equitable tolling is available to a plaintiff, a court considers five factors: (1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Jackson*, 751 F.3d at 719. The plaintiff's argument does not fit any of these factors. Toebe does not even suggest that it did not have actual or constructive notice of its claim within the limitations period, and it has not suggested any steps that it took to diligently pursue its statutory remedies—such as filing a timely civil complaint. Moreover, Toebe has cited no authority to support the novel proposition that the statute of limitations is tolled by the pendency of an arbitration, and the case law suggests otherwise. The Supreme Court has held in the context of Title VII that the rule is exactly the opposite: the pendency of arbitration proceedings does not toll the time allowed for filing a complaint seeking statutory remedies. *Int'l Union of Elec., Radio & Mach. Workers, AFL–CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 230, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976) ("The existence and utilization of grievance procedures does not toll the running of the limitations period that would otherwise begin on the date of the firing, Title VII remedies being

independent of other pre-existing remedies available to an aggrieved employee."); *see also Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47–48, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) ("[I]n general, submission of a claim to one forum does not preclude a later submission to another.").

■ The plaintiff's reliance on equitable estoppel is equally unavailing. "Equitable estoppel tolls a statute of limitations if a defendant actively prevents the plaintiff from timely filing his or her claims." *Cunningham v. Interlake S.S. Co.,* 567 F.3d 758, 760 (6th Cir.2009). "Equitable estoppel, sometimes referred to as fraudulent concealment, is invoked in cases where the defendant takes active steps to prevent the plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations." *Bridgeport Music, Inc. v. Diamond Time, Ltd.,* 371 F.3d 883, 891 (6th Cir.2004). "Application of equitable estoppel should be premised on a defendant's improper conduct as well as a plaintiff's actual and reasonable reliance thereon." *Ibid.* (quotation marks omitted). Here, Toebe cannot point to any conduct on GCNA's part that amounts to such improper behavior, or that could support a reasonable belief that GCNA had waived or would not assert a limitations defense. Instead, it appears that Toebe simply assumed—at its peril—that it did not need to file a timely Miller Act claim, because GCNA "participated in" the arbitration proceedings by filing an answer and "questioning witnesses." Toebe has not pointed to any statement or omission that could be construed as concealment or misrepresentation by GCNA—either within its pleadings or beyond them—and there has been no showing that GCNA ever even implied that it would waive its limitations defense in any prospective Miller Act litigation.

The plaintiff's contract claim based on the Miller Act must be dismissed as time-barred.

### B.  Breach of duty claim

■ GCNA argues that the "breach of duty" claims fail as a matter of law because there is no independent cause of action for "breach of the duty of good faith" or other implied duties under the contract, separate from an underlying claim for breach of contract. Toebe contends that its claim for "breach of duty" is not intended to assert a separate tort claim but merely to state an alternative theory of liability and to elaborate on the breach of contract claim.

■ "Michigan does not recognize ... an independent cause of action for a breach of the obligation of good faith." *Gorman v. Am. Honda Motor Co.,* 302 Mich.App. 113, 133, 839 N.W.2d 223, 235 (2013). "The obligation of good faith is not an independent duty, but rather a modifier that requires a subject to modify. It is a principle by which contractual obligations or other statutory duties are to be measured and judged." *Ibid.* "Thus, while the obligation of good faith ... may affect the construction and application of [particular contractual provisions], it has no life of its own that may be enforced by an independent cause of action." *Ibid.* "[T]he common-law implied covenant of good faith and fair dealing ... is not enforceable as an independent cause of action," and "the obligation of good faith has no application apart from some other contractual obligation or statutory duty." *Id.* at 134, 839 N.W.2d 223.

The plaintiff's breach of duty claim is entirely dependent on its contract claim. Because that claim is time-barred, there is no basis to allow the plaintiff to press forward on its breach-of-good-faith theory. There is no valid basis to allow an amend-

ment to expand the contract theory or to combine counts I and II.

### C. Unjust enrichment

■ GCNA contends that the claim for unjust enrichment is precluded as a matter of law where an express contract—the surety bond—governs the relations of the parties. That argument would have considerable purchase if the plaintiff's unjust enrichment theory focused on the payment bond. However, the plaintiff contends that GCNA assumed a different role when it stepped in to complete the project, as apparently it was obliged to do under the performance bond. Toebe says that GCNA was unjustly enriched in that capacity when it took the benefit of Toebe's work and completed the project without paying for it.

■ Toebe has a point. Although the Miller Act is the exclusive remedy for actions on the payment bond, *Famous Const. Corp.*, 220 F.3d at 329, it does not preclude a subcontractor from pursuing other remedies available to it under state law, *Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371, 375 (5th Cir.2003) (noting "[t]he unremarkable proposition that the Miller Act is not the exclusive remedy for a sub-subcontractor against a government contractor if other common law remedies exist"); *Wright v. U.S. Postal Serv.*, 29 F.3d 1426, 1431 (9th Cir.1994) ("Nothing in the Miller Act evinces a legislative intent to limit remedies available to subcontractors. To the contrary, the Act expands upon the remedies previously available to government subcontractors. We conclude, therefore, that the subcontractors properly may assert in district court their equitable lien claims.").

■ As the Ninth Circuit explained in *K–W Indus., a Div. of Associates Technologies, Ltd. v. Nat'l Sur. Corp.*, 855 F.2d 640, 643 (9th Cir.1988), "[t]he Miller Act simply provides the equivalent of a mechanic's lien; it does not supplant any other remedies the supplier may have against any party involved in a federal construction project." "[T]he Miller Act, like the mechanic's lien it replaces, is not the exclusive remedy in regard to the obligation which such lien secures, but rather, is separate from and independent of any *in personam* rights which the supplier might have against the owner, a contractor, or a subcontractor, by way of a contract or otherwise." *Id.* at 643 (quotation marks omitted) (holding that the "application of Montana's unfair insurance claims practices law to Miller Act sureties is not preempted by the Miller Act").

■ "Where neither a valid Miller Act nor mechanic's lien claim exists, other statutory or common law remedies may be available to an unpaid supplier," and "a state law claim based on unjust enrichment may justify recovery from a general contractor wholly apart from the Miller Act." *United States ex rel. Sunworks Div. of Sun Collector Corp. v. Ins. Co. of N. Am.*, 695 F.2d 455, 458 (10th Cir.1982). As the Tenth Circuit explained in *Sunworks:*

> In its quantum meruit claim, Sunworks does not seek recovery from the Miller Act payment bond. Instead it asserts its right to obtain a personal judgment against Fortec, alleging that Fortec has been unjustly enriched because it has utilized the collectors in completing the project and has received payment from the United States, without paying either Welco or Sunworks for the material. Sunworks contends that, as a matter of equity, Fortec should be required to compensate it for the benefit received from the use of material that it supplied.

*Ibid.* The court of appeals held that "Sunworks may pursue its quantum meruit claim regardless of the availability of a

Miller Act remedy," and reversed the dismissal of that claim. *Ibid.*

■ Under Michigan law, to plead a claim of unjust enrichment, a plaintiff must establish that the defendant has received and retained a benefit from the plaintiff and inequity has resulted. *Fodale v. Waste Mgmt. of Michigan, Inc.,* 271 Mich. App. 11, 36, 718 N.W.2d 827, 841 (2006). Michigan courts will then imply a contract to prevent unjust enrichment. *Ibid.* However, courts will not imply a contract where there is an express contract governing the same subject matter. *Ibid.*

Toebe argues that it has stated a plausible claim for unjust enrichment against GCNA in its capacity as the takeover prime contractor and not merely as a surety, relying principally on *Morris Pumps v. Centerline Piping, Inc.,* 273 Mich.App. 187, 729 N.W.2d 898 (2007). The Court agrees. In *Morris,* as in this case, the prime contractor for a city sewer project engaged a mechanical subcontractor, which in turn contracted with certain suppliers, including the plaintiffs, to deliver materials used on the job. The prime contractor also engaged a surety to provide a payment bond for the project. The mechanical subcontractor folded and abandoned the job before completing, and as a result the material suppliers were left unpaid. The prime contractor retained a substitute mechanical subcontractor to complete that part of the project, which it did by using the materials the plaintiff had delivered to the job site, even though it never paid for them. The suppliers sued the prime contractor on an unjust enrichment theory, arguing that it had benefitted from the use of the suppliers' previously delivered materials by the replacement subcontractor that finished the job. The defendant prime contractor argued that the unjust enrichment claim was precluded by the existence of an express contract between the suppliers and the subcontractor. However, the *Morris Pumps* court rejected that argument, holding that because there was no contract between the defendant prime contractor and the suppliers, the unjust enrichment claim could proceed.

The same reasoning applies here. The unjust enrichment claim is not precluded by the existence of any express contract between the parties because there was no such contract. The payment bond, to the extent that it involved GCNA and Toebe, did not directly govern the nature of the work Toebe was to perform or the terms of payment for that work. And the performance bond provided no benefit to Toebe at all. There was no contract involving the construction work between A/B and Toebe, and by extension there was no contract between GCNA and Toebe once GCNA took over as the completion contractor.

GCNA was more than just a surety in this case—it stepped in as takeover contractor and hired Mavcon to complete the project when A/B failed to do so, under the terms of its performance bond. Toebe alleges that GCNA, in its capacity as the takeover contractor, benefitted from the value of the work completed on excavating and pouring the "drilled shaft foundations," and it therefore plausibly has alleged a claim that it would be inequitable to allow GCNA to retain the benefit of that labor performed by Toebe without paying any compensation. *See Peabody v. DiMeglio,* 306 Mich.App. 397, 408, 856 N.W.2d 245, 251 (2014) ("Plaintiff alleges not only that the estate owes her for the decedent's breach, but that Marta was unjustly enriched when she retained the funds from the sale of the Colorado property. This is a purely equitable claim that is not covered by any express contract of the parties.").

GCNA attempts to resist this claim by asserting that no "materials" were supplied by Toebe, or that it had "nothing to do" with the work because it took over the project after Toebe's work was completed. But the value of what the plaintiff supplied—in this case, its labor—became an enduring component of the project as soon as the work was completed. GCNA enjoyed that value when it proceeded to complete the project without doing (or redoing) at least some of the work for which Toebe was not paid.

Finally, it appears undisputed that the complaint was filed well within the six-year limitations period for an unjust enrichment claim, as measured from any point in 2011 or any later year when the claim for nonpayment could have accrued. *Trudel v. City of Allen Park,* No. 304507, 2013 WL 6037152, at *17 (Mich.Ct.App. Nov. 14, 2013) ("The statute of limitations for unjust enrichment claims is six years.") (citing Mich. Comp. Laws § 600.5813 ("All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes.")).

Toebe's unjust enrichment claim, therefore, is viable at this pleading stage of the lawsuit.

### III.

The plaintiff has not stated a claim for which relief can be granted in counts I through III of its complaint. However, count IV—the unjust enrichment claim—may proceed.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt. # 7] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that counts I, II and III of the complaint are **DIS**-MISSED. The motion is **DENIED** in all other respects.