# STATE OF MICHIGAN

# COURT OF APPEALS

VERONICA DOVER,

Plaintiff-Appellee,

v

OAK PARK GARDENS, LLC, and
HARTMAN AND TYNER, INC.,

Defendants-Appellants.

UNPUBLISHED
September 12, 2017

No. 332241
Oakland Circuit Court
LC No. 2015-145678-NO

Before: O'BRIEN, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Defendants appeal by leave granted[1] an order granting in part and denying in part their motions for summary disposition under MCR 2.116(C)(8) and (10). We reverse in part and remand to the trial court to enter summary disposition in favor of defendant under MCR 2.116(C)(10).

Plaintiff alleges she was injured when she slipped on ice and fell as she was walking down a concrete step from her porch. The porch and step were outside the rear entrance to her apartment, which was located in defendants' apartment complex. Plaintiff's apartment had two entrances: one in the front and one in the rear. There was parking available at either the front or the rear of the building. Weather records indicated that the temperature never rose above freezing in the two days leading up to plaintiff's fall and that two inches of snow had fallen the day before.

Plaintiff's daughter, Bryanna Hill, and Bryanna's boyfriend, Ryan Lambkin, lived in the apartment with plaintiff. According to plaintiff, she took Bryanna to school the morning of her alleged fall and used the steps without incident. At the time of the alleged fall, plaintiff was leaving her apartment to take Bryanna to a hair appointment. After plaintiff fell, Bryanna, Ryan, and Byron Hill, plaintiff's son who was visiting the apartment at the time, helped plaintiff up off the steps and into the apartment. Bryanna, Ryan, and Byron walked on the porch and steps

---

[1] *Dover v Oak Park Gardens LLC*, unpublished order of the Court of Appeals entered August 24, 2016 (Docket No. 332241).

without incident. Photographs taken by Bryanna a half hour after the alleged fall show the concrete steps with patches of ice, some areas that appear dry, and some areas that are covered in light snow. Defendants' employee removed snow from the sidewalks and steps at the apartment complex at 8:30 a.m. that morning, and, at that time, there had been "a trace" of snow. He did not apply de-icer to the steps because it "wasn't needed."

Plaintiff sued defendants alleging negligence and violations of MCL 554.139(1)(a) and (b). Defendants filed motions for summary disposition arguing, among other things, that (1) the alleged icy condition was open and obvious and (2) there was no genuine issue of material fact regarding whether the steps where plaintiff allegedly fell were fit for their intended purpose. The trial court denied defendant's motion to both issues. In regard to the negligence claim, the trial court held that the icy condition was open and obvious, but there was a question of fact whether it was effectively unavoidable. With respect to plaintiff's statutory claim, the trial court held that there was a question of fact whether the steps were fit for their intended use.

On appeal, defendants challenge the trial court's denial of their motions for summary disposition. "We review de novo a trial court's grant of summary disposition." *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506; 885 NW2d 861 (2016). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition under MCR 2.116(C)(10) is proper if "the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is . . . entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 116; 839 NW2d 223 (2013).

First, defendants argue that the trial court erred by finding that the alleged dangerous condition was open and obvious but may not have been effectively unavoidable. We agree.

In a premises liability action, "a premises possessor owes a duty to an invitee[2] to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). "However, this duty does not generally encompass removal of open and obvious dangers[.]" *Id*. "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner v Lanctoe*, 492 Mich 450, 461; 821 NW2d 88 (2012). "Generally, the hazard presented by snow and ice is open and obvious, and the landowner has no duty to warn of or remove the hazard." *Buhalis v Trinity Continuing Care Services*, 296 Mich App 685, 694; 822 NW2d 254 (2012).

---

[2] It is undisputed that plaintiff, as defendants' tenant, was an invitee on defendants' premises at the time of the alleged injury. See *Benton v Dart Properties, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006).

Plaintiff rightly concedes that the icy condition on the steps was open and obvious, but she argues that "special aspects" of the condition existed. "[I]f special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo*, 464 Mich at 517. "[T]his narrow 'special aspects' exception recognizes there could exist a condition that presents a risk of harm that is so unreasonably high that its presence is inexcusable, even in light of its open and obvious nature." *Hoffner*, 492 Mich at 462. An unreasonably high risk of harm exists under two circumstances: (1) where the danger itself is unreasonably dangerous, and (2) where the danger is effectively unavoidable. *Id*. at 463. Here, plaintiff argues only that the danger was effectively unavoidable. "[T]he standard for 'effective unavoidability' is that a person, for all practical purposes, must be required or compelled to confront a dangerous hazard." *Id*. at 469. "As a parallel conclusion, situations in which a person has a choice whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Id*.

The hazard in this case was not effectively unavoidable because the undisputed evidence showed that plaintiff could have used the front door to exit her apartment. The trial court erred by finding that there was a question of fact as to whether plaintiff could have used the front door because plaintiff's own testimony established that the front door to the apartment was available as a means of egress. Moreover, plaintiff could have simply used part of the step that was not covered in ice in order to avoid the hazardous condition. Accordingly, plaintiff was not "effectively trapped" in her apartment by the alleged dangerous condition, see *Joyce v Rubin*, 249 Mich App 231, 242; 642 NW2d 360 (2002), and the danger was not effectively unavoidable.

Plaintiff urges us to reach the opposite conclusion by analogizing this case to *Attala v Orcutt*, 306 Mich App 502, 504-505; 857 NW2d 275 (2014), in which the plaintiff slipped and fell on ice in the parking lot of the apartment she rented from the defendants. However, the parties in *Attala* stipulated that the entire parking lot was coated in thick ice and that the plaintiff was required to encounter the ice to reach her car. *Id*. at 503-504. No such stipulation exists here. Further, unlike in *Attala*, plaintiff in this case had an alternative means of exiting her building, and the step in question was not entirely covered in thick ice such that the ice was impossible to avoid. Therefore, this case is distinguishable from *Attala*.

Next, defendants argue that the trial court erred by finding that there was a genuine issue of material fact as to whether the porch and step were fit for their intended use. We agree.

MCL 554.139(1)(a) provides, "In every lease or license of residential premises, the lessor or licensor covenants . . . [t]hat the premises and all common areas are fit for the use intended by the parties." The statute is to be liberally construed. MCL 554.139(3). "[I]n the context of leased residential property, 'common areas' describes those areas of the property over which the lessor retains control that are shared by two or more, or all, of the tenants." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 427; 751 NW2d 8 (2008). When the common area is a parking lot,

> [MLC 554.139(1)(a)] does not require a lessor to maintain a lot in an ideal condition or in the most accessible condition possible, but merely requires the lessor to maintain it in a condition that renders it fit for use as a parking lot. Mere inconvenience of access, or the need to remove snow and ice from parked cars,

will not defeat the characterization of a lot as being fit for its intended purposes.
[*Id*. at 430.]


In *Hadden v McDermitt Apartments, LLC*, 287 Mich App 124, 130; 782 NW2d 800 (2010), this Court held that these principles "apply to all common areas, including stairways."

Our Supreme Court in *Allison*, 481 Mich at 428-431, addressed the analytical framework that is to be used in these types of cases. First, the court is to determine whether the area in question is a "common area." Then, the court is to identify the "purpose" of the common area. Lastly, the court must determine if there could be "reasonable differences of opinion regarding" whether the conditions made the common area unfit for its intended purpose. If so, then the landlord has breached its statutory duty. But if not, then no liability can attach.

In *Allison*, the plaintiff slipped and fell while walking in the defendant's parking lot, which had one to two inches of accumulated snow on it. *Id*. at 423. After the plaintiff fell, he noticed that under the snow was a layer of ice. *Id*. The *Allison* Court identified the primary purpose of a parking lot as storing vehicles, but it stressed that a parking lot had the dual purpose of allowing tenants to walk across the area to access their vehicles. *Id*. at 429. The Supreme Court noted that the only evidence of the parking lot's alleged unfitness in the case that was before it was (1) the area was covered with one to two inches of snow and (2) the plaintiff fell. *Id*. at 430. The *Allison* Court held that, under such facts, the plaintiff failed as a matter of law to show that tenants were unable to enter and exit the parking lot, park their vehicles, and, importantly, access those vehicles. *Id*. In explaining its decision, the Court reasoned that the plaintiff failed to establish that the condition of the parking lot "precluded access to his vehicle." *Id*.

This Court distinguished *Allison* in *Hadden*, 287 Mich App 124. In *Hadden*, the plaintiff used an exterior stairway consisting of approximately 12 steps to walk from her second floor apartment to her mailbox on the first floor. *Id*. at 130. The stairway was covered by a roof, but the plaintiff "noted the presence of snow on all the stairs of the stairway" and notified the defendants. *Id*. at 130-131. Despite the defendants' assurance that someone "would take care of it when he had time," the next time the plaintiff used the stairway, it was still covered in snow, and she slipped and fell. *Id*. at 131. According to the plaintiff, she could not see the ice before she fell because "it was black ice and the stairway was too dark." *Id*. After the plaintiff fell, she also "noticed that the gutters overhead were overflowing with water and icicles had formed." *Id*. This Court held that a material question of fact existed as to whether or not the exit way was fit for its intended use. *Id*. at 131-132. The *Hadden* Court explained,

> [T]he primary purpose of a stairway is to provide pedestrians reasonable access to different levels of a building or structure. Reasonable minds could conclude that the presence of black ice on a darkly lit, unsalted stairway—possibly caused or aggravated by overflowing ice water from overhead gutters in the presence of freezing rain—posed a hidden danger that denied tenants reasonable access to different levels of the apartment building and rendered the stairway unfit for its intended use. [*Id*. at 132.]

Though the facts of this case bear minor similarities to *Hadden*, that case is readily distinguishable and *Allison* controls. Here, plaintiff fell when she slipped on ice and snow on the single step that connected a concrete porch to a sidewalk at the back exit of her apartment building. This step and porch clearly constituted a common area for purposes of MCL 554.139(1)(a). See *Allison*, 481 Mich at 427; *Hadden*, 287 Mich App at 130. The step and porch allowed tenants access to the apartment's main level from the sidewalk on the ground level, or vice versa. As such, the porch and step constituted a "stairway," the purpose of which was "to provide pedestrians reasonable access to different levels of a building or structure." *Id.* at 132. Like the plaintiff in *Allison*, the only evidence that plaintiff provided to show that the common area was unfit for that purpose was that (1) the porch and step were partially covered with snow and ice and (2) plaintiff fell. On the basis of this evidence, there could not be reasonable differences of opinion regarding whether the condition "precluded" plaintiff from reasonably accessing her apartment's main or ground level. See *Allison*, 481 Mich at 430; *Hadden*, 287 Mich App at 130 ("The stairway need not be in an ideal condition, nor in the most accessible condition possible, but, rather, must provide tenants 'reasonable access' to different building levels."). In fact, plaintiff stated that she used the common area earlier that day without incident, and Bryanna, Ryan, and Byron all used the common area without issue when they assisted plaintiff after her fall. In short, just as in *Allison*, the fact that there was ice and a small amount of snow on the common area did not make it unfit for its intended purpose-people were not precluded from walking on the step and porch to access the building's main level.

Further, in this case, unlike in *Hadden*, there are not sufficient facts to distinguish it from *Allison*. The *Hadden* Court emphasized several factors that distinguished it from *Allison*: "the presence of black ice," the "darkly lit" stairway, and the "overflowing [of] ice water from overhead gutters." Here, there was no black ice,[3] there was no indication that the stairway was poorly lit, and there was no defect within defendants' control that may have possibly caused or aggravated the icy condition. In short, the conditions that distinguished *Hadden* from *Allison* are not present in this case. Rather, plaintiff slipped and fell on a seemingly ordinary patch of ice, which does not rise to the level of the exigent circumstances necessary to trigger a duty under MCL 554.139(1)(a). See *Allison*, 481 Mich at 430 ("While a lessor may have some duty under MCL 554.139(1)(a) with regard to the accumulation of snow and ice . . . it would be triggered only under much more exigent circumstances than those obtaining in this case.").

In plaintiff's brief on appeal, she relies heavily on *Benton v Dart Properties, Inc*, 270 Mich App 437; 715 NW2d 335 (2006). In *Benton*, the plaintiff was injured one evening after he slipped and fell on a darkly lit sidewalk in defendant's apartment complex. *Id.* at 439. Despite defendant's attempts at removing the snow that morning, this Court held that "reasonable minds might differ regarding whether defendant's preventive measures, which consisted of salting the sidewalks only once in the morning on the day that plaintiff slipped and fell, constituted reasonable care in light of the weather conditions that day." *Id.* at 445. Plaintiff appears to

---

[3] "Black ice" has been defined as "invisible or nearly invisible, transparent, or nearly transparent" ice. *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 483; 760 NW2d 287 (2008).

assert that *Benton* stands for the proposition that the accumulation of ice and snow in a common area of an apartment complex per se creates a question of fact as to whether the landlord's removal efforts constituted reasonable care. However, this proposition was clearly rejected by *Allison*, which was decided nearly two years after *Benton*. To hold as plaintiff seeks us to would require us to expressly ignore *Allison*, which we simply cannot do. See *State Treasurer v Sprague*, 284 Mich App 235, 242; 772 NW2d 452 (2009) (providing that we are bound by our Supreme Court's decisions). Moreover, this case deals with an unsalted stairway, not a sidewalk, and therefore we believe that *Hadden*, which was decided after *Allison*, provides a closer, albeit distinguishable, analogy to the present case.

Accordingly, because our Supreme Court's decision in *Allison* controls the disposition of this action, the trial court erred in holding that there was a question of fact whether the porch and step were fit for their intended use. We reverse and remand for entry of summary disposition in favor of defendants. We do not retain jurisdiction. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.[4]

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Christopher M. Murray

---

[4] We acknowledge defendants' argument that plaintiff waived defendants' statutory duties pursuant to MCL 554.139(2), but we need not to address this issue in light of our ruling.